**Ray E. DENMAN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 4-581A9.

Court of Appeals of Indiana, Fourth District.

March 16, 1982.

Rehearing Denied April 16, 1982.

counts of battery and three counts of driving while intoxicated resulting in death. All five counts arose out of the same incident. He raises these issues:

1. Whether the trial court erred in admitting the results of the breathalyzer test and opinion testimony as to defendant's intoxication.

2. Whether the trial court erred by refusing to grant a new trial because the State failed to disclose information to Denman.

3. Whether the trial court erred in giving two of the State's instructions and refusing to give four of the defendant's instructions.

4. Whether the trial court erred by failing to grant a motion to dismiss each count after the State's case-in-chief.

Defendant was involved in a chain reaction accident in which two children were injured, (the battery charges) and three people in two different vehicles were killed (the driving while intoxicated resulting in death charges). Denman was driving east on U. S. Highway 24 near the edge of Logansport, Indiana. The road was a four lane highway (divided by a cement island) narrowing to two lanes. The road had been resurfaced recently and the lanes were marked with temporary lane markings. Defendant was driving in the passing lane of the four lane road. There was testimony that Denman was driving at a high rate of speed when he swerved sharply into the passing lane and attempted to pass two vehicles before the road narrowed to two lanes. While passing the two vehicles defendant nearly ran out of room, apparently running over part of the cement island dividing the highway. When defendant noticed the end of the four lane highway, he realized he either had to accelerate and continue passing or brake and get back into traffic. He chose to accelerate, believing it would cause the fewest traffic problems. As he accelerated and passed the vehicles, a slower moving automobile [brown Oldsmobile] with two elderly passengers [William and Thelma Goodrich] was proceeding in

Kelly Leeman, Logansport, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

After trial by jury, appellant-defendant Ray E. Denman was convicted of two

the same direction as defendant on the two lane portion of the highway. Defendant applied his brakes to avoid the Goodrich Oldsmobile. There was a semi-trailer parked along the side of the road. There was a drop-off because of the resurfacing and the shoulder was gravel. Denman hit the right rear of the Goodrich Oldsmobile, and his car left the roadway and stopped. Defendant did not lose control of his car. The Goodrich Oldsmobile crossed the center line and hit another vehicle [Cadillac] head on in the westbound lane. The two persons in the Goodrich Oldsmobile were killed, as was the driver [Cynthia Cosgray] of the Cadillac. Two children [Alissa and Joseph Cosgray] in the Cosgray Cadillac were injured.

Denman was given a breathalyzer test at the Logansport Police Station approximately two hours after the accident. He tested .13% blood alcohol level. Defendant stated he and some co-workers had attended a meeting in Remington. On the return trip, defendant and his passengers stopped to eat. In one-half to one hour, defendant ate some "snack food" from behind the bar and had two to four "C. C. and Coke" drinks. They then resumed their return trip to Warsaw. The accident occurred on the return trip in Logansport as described above.

Defendant was sentenced to two years on each count. The driving while intoxicated resulting in death counts ran concurrently and the battery counts ran concurrently. However, the battery counts were to be served consecutively to the driving while intoxicated causing death counts.

■ Defendant first argues the trial court erred in admitting evidence of the breathalyzer test on several grounds and in admitting the arresting officer's opinion about defendant's intoxication. In *Hartman v. State*, (1980) Ind.App., 401 N.E.2d 723, three requirements of a proper foundation for admission of breathalyzer test results were discerned from Ind.Code 9–4–4.-5–5.

1. The test was administered by an operator certified by the department of toxicology;

2. The equipment used in the test was inspected and approved by the department of toxicology; and

3. The operator used techniques approved by the department of toxicology.

*Id.* at 725. Denman contends the trial court erred by allowing into evidence the certification of the breathalyzer equipment and chemicals which denied him his right of confrontation as the certification was double hearsay. The second requirement of *Hartman* required certification. Ind.Code 9–4–4.5–6(b) and (c) provide in part:

(b) The certificate ... is admissible as evidence in a prosecution under IC 9–4–1–54 ....

(c) The certificate ... pertaining to chemicals and equipment constitutes prima facie evidence that the equipment and chemicals were inspected and approved in accord with the rules and regulations of the department on the dates specified in them.

The statute plainly states the certificate issued by the department is admissible as evidence and constitutes prima facie evidence of proper inspection and approval. After prima facie evidence of proper inspection and approval, the State need not do more in that regard. Defendant could introduce evidence that the equipment had not been properly inspected. The issue would then be one for resolution by the trier of fact. However, in this case, defendant did not do so. In any event, the certificate was prima facie evidence and unrebutted evidence of proper inspection and approval.

Denman argues at length that a double hearsay, denial of the right of confrontation problem is presented. It is this very problem the legislature appeared to be addressing by the statute. The history of the section indicates that the strict rules of hearsay were not applied. When the statute was amended, this exception was redrafted in terms of admissibility. *Compare* Ind.Code 9–4–4.5–6 before and after the

1980 amendment Acts 1980, P.L. 83 § 5. The trial court did not err in admitting the certificate.

Denman also argues the test results were inadmissible because the techniques of the test operator were not shown to be approved by the department of toxicology, the third requirement of *Hartman*. The test operator stated he followed the procedure in the Breathalyzer Operational Check List. Defendant contends this does not comply with the department's approved method for administering the test. The department's approved method is a detailed two page statement of the method which appellant argues requires the performance of substantially more steps than the operational checklist. The operational checklist closely resembles the department's approved method in terms of operational language. When the two are compared it appears the procedure in the checklist is an outline of the approved methods. The procedure utilized appears to be in compliance with the approved procedure. He does not indicate what step was omitted. Appellant does not state and our comparison of the two exhibits does not demonstrate what essential procedures were omitted. We cannot hold that the trial court erred in this regard.

■ Still challenging the admissibility of the breathalyzer results, Denman argues that there were no properly promulgated rules and regulations [Ind.Code 4–22–2–1] concerning the techniques approved for administration of the test. This particular objection does not appear at trial. He argues that his objection to the admission of the test results because of failure to use approved techniques necessarily includes objections to the method of approval of the techniques. We do not agree. Denman's objection was not sufficiently specific in that regard to apprise the trial court of the promulgation problem. *Smith v. State*, (1980) Ind.App., 403 N.E.2d 869. It is waived.

■ Denman also complains that the opinion of an investigating officer concerning defendant's intoxication should not have been permitted. He does not object to

the qualifications of the officer to give an opinion, but complains only of the opinion based on inadmissible breathalyzer test results. Initially, we find the results were admissible as determined above. Also, the officer testified at length, both on direct and cross examination, about his observations of defendant. These observations provided a sufficient basis for the giving of his opinion. Defendant tried at length to refute the opinion by recounting the observation to show why and how the officer came to his conclusion. These factors were for the jury to consider in weighing the opinion testimony, and not for the court in determining whether it was admissible.

■ Appellant Denman's second allegation of error raises the failure by the State to disclose evidence which was in the State's possession and relevant to the credibility of a State's witness, the investigating arresting officer. The arresting officer, an Indiana State Trooper, was investigated by his police department for issuing false tickets to maintain or meet a quota of traffic tickets. He was found to have issued false tickets and was suspended from his job for sixty days. Denman did not learn of this information until after trial. Denman first contends that the information should have been given to him under the order on his motion for discovery. However, his motion for discovery only requests criminal arrests and convictions of the State's witnesses. Of course, the intra-department investigation and suspension of a trooper for misconduct did not amount to a crime. We conclude that this information was not within Denman's discovery request no matter how broadly construed.

■ However, we must also determine whether the evidence of misconduct was of a nature that the State had a duty to disclose it to the defense independent of a discovery motion. The prosecutor is under a duty to volunteer material evidence to the defense in order that "justice shall be done." *United States v. Agurs*, (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *White v. State*, (1975) Ind., 330 N.E.2d 84.

Evidence is material if it "creates a reasonable doubt that did not otherwise exist." 96 S.Ct. at 2402. This does not require a prosecutor to deliver his entire file. The plaintiff is under no duty to disclose voluntarily all that he learns about the case and their witnesses. A jury may be persuaded by many factors ranging from improper and trivial considerations to legitimate evidence giving rise to a doubt. If the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. However, if there is no reasonable doubt about guilt whether or not the evidence is considered, there is no reversible error. *Agurs, supra.*

Appellant characterizes the evidence as admissible for purpose of impeachment on cross-examination along the lines of *Haeger v. State*, (1979) Ind.App., 390 N.E.2d 239 and *Pfefferkorn v. State*, (1980) Ind.App., 413 N.E.2d 1088. We would likewise characterize it as impeaching evidence rather than exculpatory.[1] In *Richard v. State*, (1978) 269 Ind. 607, 382 N.E.2d 899 the Indiana Supreme Court held:

As for evidence which is, at most, impeaching, it has been said that, 'The inevitable uncertainty about the impact of impeachment matter means that such evidence can very rarely clear the bar, and consequently a prosecutor is seldom required to volunteer it to the defense.' ('Because impeachment evidence is less likely to give rise to a reasonable doubt than exculpatory evidence, its nondisclosure would serve as the basis for a new trial less frequently than the nondisclosure of exculpatory evidence'). It has also been noted that, '[A]ll of the reported cases which have granted relief on the basis of impeachment evidence under the third *Agurs* test have involved evidence of either threats to prosecute or promises of leniency by the government.'

Neither of those cases are presented here. It was not error for the court to refuse a new trial based upon the nondisclosure of this impeachment evidence.

■ Next, Denman contends the court erred in giving two of the State's instructions and in refusing to give four of the defendant's instructions.[2] The two State's instructions are nos. 9, which provides:

It is my duty to instruct you that the law of the State of Indiana provides that the fact, if you find it to be a fact, that the defendant's blood alcohol concentration by weight was ten hundredth's per cent (.10%); or more constitutes prima facie evidence that he was intoxicated. IC 9–4–1–54.

By "prima facie evidence" I mean evidence which is good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the parties claim or defense, and which if not rebutted or contradicted, will remain sufficient.

and 11, which provides:

A defendant is responsible for the death of a person if the injury inflicted upon the person during the course of the defendant's conduct was proximately caused by and the direct result of the unlawful act of the defendant; and the fact that other causes may also have contributed to the death does not relieve the defendant of responsibility.

Denman contends instruction no. 9 was erroneously given for two reasons. First, since he argues the breathalyzer test results were inadmissible, it was error to instruct about those results. Since the results are admissible, there was no error in that regard. Second, he argues that the instruction causes undue weight to be given to the breathalyzer. Defendant's instruction no. 15, which was given, covers similar matters.

---

1. The evidence is admissible for impeachment purposes. *Haeger v. State*, (1979) Ind.App., 390 N.E.2d 239; *Pfefferkorn v. State*, (1980) Ind.App., 413 N.E.2d 1088. However, the issue is one of disclosure by the State, not admissibility under the cases cited.

2. We note appellant has failed to set out either of these two instructions in the argument section of his brief. See Ind.Rules of Procedure, A.R. 8.3(A)(7). Nor has he set out his objections thereto verbatim. *Id.*

It also tells the jury that the result of the breathalyzer is a factor for the jury to consider among other things. Considering the instructions as a whole in reference to each other, no undue influence was placed on the breathalyzer. *Johnson v. State*, (1980) Ind., 398 N.E.2d 665; *Smith v. State*, (1979) Ind., 388 N.E.2d 484. By preliminary instruction no. 3, the jury was instructed to consider the instructions as a whole and not single out any individual instruction. There was no error.

 Denman argues instruction no. 11 was erroneously given because it misleads the jury by stating other causes could not be considered, assumes the truth of facts in issue and fails to define proximate cause. Denman failed to tender a definition of proximate cause. He cannot argue error because of a failure to define a term, thereby leaving an instruction incomplete, when he has not tendered a more complete instruction. *Woods v. State*, (1979) Ind.App., 391 N.E.2d 858. This of course does not mean the instruction can be otherwise erroneous or misleading. Denman does not state what facts were assumed other than to state that the instruction presumed defendant's acts to be unlawful. The wording of the instruction is speaking generally of a defendant. It speaks of responsibility if injury is inflicted during unlawful conduct. It does not direct the jury to find the conduct unlawful, but only instructs on responsibility if conduct is unlawful and causes death.

Also, Denman argues the instruction is confusing or misleading because it prevents the jury from considering contributing causes of death. It is not confusing. The instruction that other causes may have contributed to death does not relieve the actor of responsibility is an accurate statement of the law. *Bivins v. State*, (1970) 254 Ind. 184, 258 N.E.2d 644. That contributing causes cannot be considered is not the purpose of the instruction. The instruction merely states that other contributing causes do not relieve the actor of responsibility.

 Denman argues the trial court erred in refusing to give instructions no. 3, which provides:

When evidence before the Jury is circumstantial certain rules have been established for the Jury's guidance, and it is not enough that circumstances be consistent with the hypothesis of guilt, but must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence, and must be such that the trier of the facts may reasonably and naturally infer to a moral certainty the existence of the facts sought to by [sic] proved.

and no. 14, which provides:

In Indiana if a person is found to have intended to do an act this is all that is required to establish the intentional element of the offense. But in Indiana the law provides that if the accused abandons his evil intention at any time before so much of the act is done as is necessary to constitute a defense, his abandonment will prevent what has been done from being indictable.

Because of our resolution of the sufficiency issues on the battery counts, *infra*, we need not reach the allegations concerning failure to give defendant's instruction nos. 12 and 13. Instruction no. 3 is covered by his instruction no. 5 as well as State's instruction no. 18 both given by the court.[3] A trial

3. Instruction no. 5 reads:
 Ladies and gentlemen of the Jury you are instructed that the prosecution has relied on circumstantial evidence to prove the charges now pending against the defendant, Ray E. Denman. You are instructed that the law in Indiana applicable under these circumstances to the interpretation and application of circumstantial evidence is as follows: that in any case on circumstantial evidence alone, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis, except that of defendant's guilt; if the circumstances disclosed by the evidence can be explained on any reasonable hypothesis, except that of defendant's guilt, if the circumstances disclosed by the evidence can be explained on any reasonable theory consistent with defendant's innocence, he is entitled to an acquittal. But circumstantial evidence alone is enough to support a verdict of guilty of any

court does not err by refusing to give an instruction which is adequately covered by other instructions. *Hester v. State*, (1978) 267 Ind. 697, 373 N.E.2d 141. Denman also argues the court should have given defendant's instruction no. 14 dealing with abandonment. By statute abandonment is a defense only to attempt, conspiracy or where a defendant is charged as an accessory. Ind.Code 35–41–3–10. Therefore, the court did not err in refusing to give an instruction on abandonment.

▄▄▄▄ Finally, Denman argues the trial court erred by refusing to grant a motion to dismiss at the close of the State's case in chief. More properly denominated a motion for a judgment on the evidence, Denman has waived any error in the ruling on the motion by presenting evidence thereafter. *Perry v. State*, (1979) Ind.App., 393 N.E.2d 204. However, we will discuss it in terms of sufficiency because it is effectively the same issue as is argued by appellant and it is permissible to argue sufficiency for the first time on appeal. T.R. 50(A)(5).

▄▄▄ Denman argues that the first three counts cannot be supported because of the inadmissibility of the breathalyzer test results. We held the results were admissible. Also, the officer testified about the circumstances regarding defendant's appearance which would permit a trier of fact to find intoxication. Denman also argues that

even with the results of a breathalyzer test given two hours after the accident, the jury was not bound to find intoxication. He contends that because it takes up to two hours for the alcohol to enter a person's blood, the test results may not have been as high if tested at the time of the accident. Of course a jury is not bound to find intoxication. This was a matter for the jury to weigh and exclude based upon the length of time between the drinks, accident and breathalyzer test and other testimony before them. We will not reweigh the evidence on appeal.[4]

Denman argues the two battery counts cannot be sustained because the evidence does not support an intentional or knowing touching of another in a rude, insolent or angry manner. Ind.Code 35–42–2–1 requires proof of knowing or intentional touching. Denman argues the evidence showed that he "braked and skidded, a factor undoubtedly indicating a lack of intent to touch."

Ind.Code 35–41–2–2 defines culpable conduct in the following terms:

(a) A person engaged in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

---

crime, provided the Jury believe beyond a reasonable doubt from the evidence given in the case that the accused is guilty as charged. The evidence must be of such conclusive and persuasive force that it points surely and unerringly to the guilt of the accused to such an extent that it excludes every reasonable hypothesis of innocence. Therefore, if circumstantial evidence in this case gives rise to two reasonable inferences, one of guilt and one of the defendant's innocence, you must acquit the defendant.

Instruction no. 18 reads:

Any fact necessary to be proved in this case may be proved by direct evidence of eyewitnesses, or by circumstantial evidence, or by both circumstantial evidence and direct evidence of eyewitnesses. Circumstantial evidence is to be regarded by the jury in all cases. When it is strong and satisfactory, the jury should so consider it, neither enlarging or belittling its force. It should have its

just and fair weight with the jury and if, when it is taken as a whole and is fairly and candidly weighed, it convinces the guarded judgment, the jury should act upon such conviction. You are not to fancy situations or occurrences which do not appear in the evidence, but you are to make such just and reasonable inferences from the circumstances proved as the guarded judgment of a reasonable man ordinarily would make under like circumstances.

4. Denman raises an issue of causation based upon *Higginbotham v. State*, (1981) Ind.App., 427 N.E.2d 896. He did not raise a *Higginbotham* problem of cause and result until submitting his additional authorities before oral argument. Therefore, he has not timely raised an issue of causation for review. Nor does his discussion of instruction no. 11 raise the matter of causation distinguished from result.

(c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

The evidence does not support and the State does not argue a finding or inference of intentional conduct. Nowhere is a conscious objective to commit a battery shown.

To support a finding of guilty on the battery charges, there must be sufficient evidence to make the inference of "knowingly" reasonable. Since the mens rea of a criminal actor is difficult to prove by direct evidence, circumstantial evidence is often the only means. In this case, the State must have proven circumstances from which the jury could reasonably infer that Denman engaged in a touching of another in a rude, insolent or angry manner aware of a high probability that he was doing so. Lack of ordinary care is not sufficient to establish the intent or knowing elements of battery. *Luther v. State*, (1912) 177 Ind. 619, 98 N.E. 640, 642.

Here the State proved Denman was intoxicated and driving an automobile. They showed he was driving in a somewhat reckless manner. Such conduct we believe would support an inference of recklessness or engaging in conduct in an unjustifiable disregard of the harm that might result, deviating substantially from acceptable standards of conduct. However, his reckless operation of a vehicle and unjustifiable disregard of the consequences do not amount to the engaging in a touching with the awareness of a high probability he is doing so.

The Indiana Criminal Law Study Commission Comments aid recognition of the varying levels of culpability.

Recklessness is between the poles of intentionality and negligence. Recklessness is like the former in that the actor is conscious of a forbidden harm, and he realizes that his conduct increases the risk of its occurrence and his actions indicate an attitude of mental indifference to obvious risks. It is a form of intentional harm-doing in that it is volitional in a wrong direction. Recklessness, however, differs from intentionality in that the actor does not seek to attain the harm; rather he believes that the harm will not occur. That he deliberately "took the risk," that he thought there was some increased likelihood of harm, does not alter the basic fact that he believed that no harm would actually be committed. Recklessness is similar to negligence in that both include an unreasonable increase in the risk of harm. But recklessness differs from negligence in that in the latter the actor is completely unaware of the dangerousness of his behavior although actually it was unreasonably increasing the risk of the occurrence of a proscribed harm. One further caveat, recklessness must not be confused with the situation where the actor does intend to effect injury, but is indifferent to which particular person will be hurt, *e.g.*, firing into a crowd.

The State has only proven, at most, reckless conduct, conscious disregard of harm that might result or engaging in conduct which has a tendency to result in harm. They have not shown the awareness of a high probability necessary for knowingly. Ind. Code 35–41–2–2 and Indiana Criminal Law Study Commission Comments. He has knowingly driven while intoxicated and has taken a risk involving increased likelihood of harm, believing no harm would occur. This is insufficient to support an inference of knowingly. We reverse the guilty findings on the battery counts.[5]

---

5. Although Denman does not argue on this basis, Ind.Code 9–4–1–54 was amended in 1981 (P.L. 122) to make it a Class D felony to cause serious bodily injury while driving under the influence of intoxicants. It would seem that the General Assembly was seeking to fill a loophole. If they had considered battery as a possible charge in such a case, no amendment would have been necessary. At oral argument the State believed this was a reason for the amendment. Also, battery resulting in bodily injury is a Class C felony, therefore there was no intent to enhance or alter the battery penalty for causing injury with an automobile while

The judgment of the trial court on the battery counts are reversed; the judgment on the driving while intoxicated resulting in death counts are affirmed.

MILLER, P. J., and SHIELDS, J. (sitting by designation), concur.

intoxicated. As a matter of statutory construction, we cannot presume the legislature intended to enact two offenses covering the same crime with the same penalty.