## PETERSON *v.* HAFFNER.

ASSAULT AND BATTERY.—*Unintentional Injury from Intentional Act.*—Where a person, unprovoked, threw a piece of mortar at another, and a part of it struck a third person, and injured his eye, without his contributory fault, though there was no intention to inflict the injury, and the act was done in sport, yet, it having been done intentionally, the perpetrator was liable for the injury inflicted, in an action against him by the person injured, for damages occasioned by the assault and battery.

SAME.—*Infancy.*—*Damages.*—Infancy is no defence to a suit for damages occasioned by an assault and battery.

From the Tippecanoe Circuit Court.

*J. R. Coffroth, M. Jones* and *J. L. Miller*, for appellant.

*J. A. Stein*, for appellee.

PERKINS, J.—Suit by Haffner against Peterson, for damages occasioned by an assault and battery.

Answer: the general denial, and a special paragraph. A demurrer was sustained to the latter; but, as the facts stated in it were admissible under the general denial, the action of the court upon the demurrer is unimportant.

Trial; verdict for the plaintiff, in the sum of one thousand dollars, and judgment, over a motion for a new trial, on the verdict; exception. Errors are properly assigned.

The facts of the case are as follows:

On the 25th of April, 1874, Fred Haffner, a boy five years old, and his brother Willie, who was between six and seven years old, were seated in front of their father's house, in Lafayette, upon a sand-heap, beside a bed of mortar.

We will let William Peterson, the defendant, a boy between thirteen and fourteen years of age at the time of committing the assault and battery, make his own statement of the transaction. He testified: " Me and Thomas A. Cunningham, George Gladden, William Winehart and Frank Robinson were up in the Hollow, where we had a fire roasting apples. We then came down on Fifth street; Haffner's boys were on a pile of sand by a box of mortar; we were all playing there in the street, throwing pebbles, chips and mortar at each other; had been there about twenty or thirty minutes; I was sitting on one corner of the mortar-box, and Willie Haffner on the opposite corner; Willie Winehart had just thrown some mortar at me, and I picked up some mortar and said to Willie Haffner, ' Run or I will hit you,' and he started to run, and Freddie with him, and I threw the mortar at Willie, and a part hit him on the back of his head, and just as I threw Freddie turned to look back, and a part of the mortar flew off and hit him above the eye; we were laughing and playing; was not mad; all in fun, and just as we were in the habit of playing; Freddie went to wipe the mortar off and commenced to cry, and Willie Haffner took hold of him and commenced to try to rub the mortar off; Willie Haffner had been dabbling in the mortar with his hands, same as I had, but I do not recollect that he threw any at me or any of the other boys; I was not mad at Willie or Freddie Haffner, and did not intend to hurt either of them; it was all in play and fun; we were all laughing; I stayed until Mrs. Haffner and Mr. Sheehan came round to where Freddie was crying, inside of the gate, and then went home; Willie and Freddie Haffner were in the habit of being with us boys in the street,

and frequently came to our house and played in our yard with me; never had any quarrel or difficulty with them; was always on good terms with them until after this happened; I was in Haffner's house on next Sunday after the accident; Mrs. Haffner called me to come in, and asked me if I had done it a purpose; I told her that I had not, that I did not want to hurt Freddie; she asked me if I was not going to pay the doctor's bill; we were playing by throwing chips, pebbles and things at each other, as we were daily in the habit of doing."

Mrs. Haffner testified as follows:

"I am the mother of Fred Haffner, the plaintiff; he was five years old in December, 1874; Willie Haffner will be seven years old next August (1875). I heard Fred crying, and went round to the front of the house and found Willie and Fred just inside of the gate. The boys said: 'Now, Willie Peterson, you will catch it,' and then Willie Peterson ran off. Freddie had lime mortar on his face and in his eye. I tried to wash it out; then took him to Dr. O'Farrell; he was the nearest doctor; this was the 25th of April, 1874. Freddie suffered a great deal with his eye. Next Sunday after the accident, I called Willie Peterson into my house and asked him why he had hurt Freddie's eye. He did not say any thing, only hung his head. I asked him if he was not going to work to make money to pay the doctor bill; he did not say any thing. I did not allow Willie and Freddie to go into the street with those boys. They had been out about fifteen minutes when I heard Freddie crying Willie and Freddie did not go with Willie Peterson; did not play with him; they never went to Mr. Peterson's house for apples, or played with Willie Peterson, in Peterson's yard. These boys had been about there throwing stones in our yard, and I had ordered them off."

Freddie was placed under the treatment of different oculists. It was of no avail. His eye went out.

The testimony of the two witnesses, above copied, fully and fairly presents the case. There is no conflict in the testimony, except upon the two points, viz.: as to the Haffner boys playing with the other boys in the street, and the conversation between Mrs. Haffner and Willie Peterson on the Sunday mentioned. The testimony of the two witnesses given represents that of all. The conflict is upon points unimportant in this case. It were well that domestic training and discipline of children should prevent such barbarous and dangerous sports as that described in the testimony in this cause. They may be attended by most unhappy and serious consequences. This case furnishes a sad instance. But, where domestic government does not prevent, the law must intervene to redress, in proper cases, injuries inflicted in them.

It is clear that an assault and battery was committed. It was unprovoked. Neither Willie nor Freddie Haffner had thrown any thing at any of the other boys, or in any way interfered with them, during the day, and they were at the time, as we may say, at their own home. There is no question of contributory negligence, or " of mutual consent to engage in play of a dangerous character," in this case. The assault was rudely, purposely and wilfully committed. The appellant, defendant below, notified the Haffner boys of his intention to commit the acts. He did not intend to inflict the injury, but he intended to do the wrongful act from which the injury resulted, and he is answerable for that result. 3 Cooley Bl. Com. 120, n. 4. The fact that the act was done in sport, it having been intentionally done, will not relieve the perpetrator from liability. See *Adams* v. *Waggoner*, 33 Ind. 531.

Infancy is not a defence to this action. An infant is liable for his torts, though not generally upon his contracts. In Reeve's Domestic Relations, it is said: " Where the minor has committed a tort with force, he

is liable at any age." Page 386, and note 2 by Parker & Baldwin.

*Conklin* v. *Thompson*, 29 Barbour, 218, was a suit against a lad fourteen years of age, for the value of a horse killed by fright, on the 4th of July, 1857, in the city of Poughkeepsie. The fright of the horse was produced by the explosion of a fire-cracker, thrown under his feet by the boy in sport. The court say: "If the death of the horse resulted from the wrongful act of the defendant, infancy is no protection. He is as fully liable for the damages as if he had been of full age."

*Harvey* v. *Dunlap*, Supplement to Hill & Denio, 193, is relied on by counsel for appellant. That was a suit for an assault and battery, by which the eye of the plaintiff's daughter was put out. The daughter was five years old, the defendant six. The children went out to gather beechnuts; after a few hours absence, they returned, both crying, one of the eyes of the little girl having been put out. On the trial the judge charged the jury; "that in cases of this kind the plaintiff could not recover, unless he made out that the defendant had been guilty of a wrongful act. That if they were satisfied, from all the evidence in the cause, that the injury complained of was the result of unavoidable accident, or in other words, that it was one which ordinary care and foresight could not have prevented, their verdict should be for the defendant. The judge observed that there was no evidence, except the defendant's admissions, showing that he had committed the injury, and these gave no information whether it was done by accident or design."

In the Supreme Court, NELSON, C. J., in delivering the opinion of the court, said: "I am of opinion that the grounds upon which the learned judge placed the case before the jury were correct. No case or principle can be found, or if found can be maintained, subjecting an individual to liability for an act done without fault on his part; and this was substantially the doctrine of the charge.

All the cases concede that an injury arising from inevitable accident, or, which in law or reason is the same thing, from an act that ordinary human care and foresight are unable to guard against, is but the misfortune of the sufferer, and lays no foundation for legal responsibility.  *  *  *
It was said by DALLAS, C. J., in *Wakeman* v. *Robinson*, 1 Bing. 213, 'if the accident happened entirely without default on the part of the defendant, or blame imputable to him, the action does not lie;' and the same principle is recognized in *Bullock* v. *Babcock*, 3 Wend. 391."

He added, that it was for the jury to determine upon the facts and circumstances before them, whether or not the defendant was in the wrong. "In order to arrive at a decision upon this question," he said, "the jury had a right to take into consideration the childhood of the parties, the friendly relations existing between them, the conduct of both on their return home, but more especially the repeated admissions of the plaintiff that the defendant was not to blame."

We accept the above as authority, and it sustains the decision below, in the case now before this court.  The case cited was decided, not on the ground that an action would not lie in such case, but that, in that particular case, the evidence failed to show, that the defendant did the act producing the injury.

What we have already said renders it unnecessary, that we should extend this opinion by special comment on the instructions given and refused, and the ruling on the motion for a new trial.

The judgment is affirmed, with costs.