THE HOME INSURANCE COMPANY *v.* ROBERT NEILSEN ;
JAMES W. SMOLEK.

[No. 3-1273A169. Filed August 20, 1975. Rehearing denied September 22, 1975. Transfer denied March 26, 1976.]

*George Wildman, Miller, Tolbert, Hirschauer & Wildman,* of Logansport, for appellant.

*Paul Reed, Reed & St. Martin,* of Knox, *Jack Allen, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellee.

GARRARD, J.—Appellees, Neilsen and Smolek, were neighboring farmers. A dispute arose between them which culminated in Neilsen striking Smolek with his fist. Smolek brought suit for assault and battery. Neilsen then notified appellant (the Company) to defend on the basis that he was protected by the comprehensive liability and medical payments provisions of his homeowner's policy. The Company refused, asserting there was no coverage. Neilsen then brought this action for declaratory judgment. After trial, the court entered judgment that the Company was required to defend in Smolek's suit and that:

". . . said company is bound by the liability provisions and terms of its policy for the occurrence of acts of the character described in said law suit."

At issue is proper interpretation of the policy's exclusionary clause which, in part, excludes liability of the company:

"(d) under Coverage G and H [comprehensive liability and medical payments] to bodily injury or property damage caused intentionally by or at the direction of the Insured;"

It is undisputed that Smolek's action is strictly one for assault and battery. It is not contended that Neilsen did not intend to strike Smolek. Instead, Neilsen asserts simply that he did not intend to inflict the injuries of which Smolek complains, and that his actions were performed in self defense.

The language used in the opinions considering such exclusionary clauses, as well as those which obversely provide coverage where the injury occurs through accidental means, sometimes differs. The differences, however, appear to be attributable more to the factual circumstances before the court than to any general disagreement over the proper interpretation of the contract.

The question is the meaning to be assigned the phrase "caused intentionally". Three distinct definitions have been urged upon the courts:

(1) Intentional refers to the volitional act which produces injury. If the insured intentionally did the act, the resulting injury is intentional and not accidental for purposes regarding the policy.

(2) Intentional refers to the result achieved. Only where the insured intended to inflict the precise injury or degree of injury which in fact resulted should the injury be considered as not accidental.

(3) Intentional is more demanding than (1) but not so difficult of proof as (2). It refers instead to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs.

We first note that the courts have uniformly refused to recognize definition (2), intention *qua* result, as a reasonable interpretation. *Pearlmen* v. *Mass. B. & I. Co.* (1955), 126 Ind. App. 294, 130 N.E.2d 54; *People's Life Ins. Co.* v. *Menard* (1954), 124 Ind. App. 606, 117 N.E.2d 376; *Pendergraft* v. *Commercial Std. F & M Co.* (CA 10th 1965), 342 F.2d 427; *Hartford A & I Co.* v. *Krekeler* (E.D. Mo. 1973), 363 F.Supp. 354.

The basis for definition (1), intent *qua* the act, is drawn from the standard applied to the *liability* of the insured party *to the third party* for his actions. Indiana follows the general rule that for purposes of liability in an action for assault and battery, a person will be presumed, as a matter of law, to have intended the natural and probable consequences of his wrongful act. *Peterson* v. *Haffner* (1877), 59 Ind. 130; *Singer Sewing Machine Co.* v. *Phipps* (1911), 49 Ind. App. 116, 94 N.E. 793. It is thus urged that since this is the liability standard for the intentional tort, it should also be the contractual standard which invokes the exclusion. Yet the contract of the parties does

not expressly exclude damages from an assault and battery. Instead, it speaks of injuries caused intentionally.

We think the better view requires more specificity to the intent for a party's conduct to fall within the exclusionary clause. On this basis, the decisions of the several jurisdictions can generally be reconciled.

In *Morrill* v. *Gallagher* (1963), 370 Mich. 578, 122 N.W.2d 687, the intentional injury exclusion did not prevent coverage for the benefit of a person injured when the insured threw a cherry bomb. Holding the evidence sufficient to sustain coverage, the court noted that while the cherry bomb was intentionally thrown, there was no evidence to show any intention to cause any physical harm to the injured person.

In *McDonald* v. *United Pac. Ins. Co.* (1957), 210 Ore. 395, 311 P.2d 425, the appellant sought to recover the amount of a settlement he had paid and attorneys' fees incurred in connection with a claim against him for assault and battery. The court spoke of the public policy against one's ability to insure against his own wilful and unlawful acts, and held that the question of coverage depended upon the allegations of the complaint, noting with reference to notice pleading that Oregon had "not yet laid the pleadings on the shelf". In its rationale, however, the court stated "the intent to do harm" to be the very essence of the tort.

In *State Farm M.A.I. Co.* v. *Worthington* (CA 8th 1968), 405 F.2d 683, the question before the court was whether a guilty plea to the collateral criminal prosecution constituted a conclusive admission of intent to injure within the meaning of the exclusionary clause. The court held it did not and affirmed coverage on the basis of evidence that the insured had fired his rifle in the air at an angle not intending to hit any of the boys who had apparently been about to raid his stock of watermelons. The court observed:

"The preponderance of the evidence in this case indicates that while the discharge of the firearm was intentional the fatal shooting of Worthington was not intentional but accidental." 405 F.2d 686.

Thus, while the court stated the policy provision was unambiguous, it did so by its assumed rejection of the intent *qua* act interpretation.

In a different circumstance *Caspersen* v. *Webber* (1973), 298 Minn. 93, 213 N.W.2d 327, permitted coverage where the defendant had intentionally pushed the plaintiff aside in order to get into a coatroom, but there had been in his actions no intent to cause harm.

However, in further definition, the *Casperson* court recognized that the exclusion would apply either where the intent to cause harm was present, or:

". . . where the nature or character of the act is such that an intent to cause harm is thereby inferred as a matter of law." 213 N.W.2d 330.

Thus, in *Hartford A & I Co.* v. *Krekeler, supra,* the district court found no policy coverage based upon the exclusion of an occurrence resulting in injury "expected or intended", where the defendant admittedly struck the plaintiff intentionally, but asserted he did so in self-defense not intending to physically injure him.

Noting that Krekeler intended both the clenching and swinging of his fist *and* its contact with Donato's body, the court observed that it belied reason to say that he did not intend to physically injure Donato.

Superficial analysis would suggest that this is an acceptance of the "natural consequences of the act" rule, but it is not. It is a much more narrow gauge that recognizes the correlation only where reason mandates that from the very nature of the act, harm to the injured party must have been intended. A defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly.

Neither intent *qua* the act nor the intent to cause harm definition can be deemed unreasonable in light of public policy

which recognizes the public benefit from liability insurance and yet dictates that a person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity.

Therefore, the policy language is arguably ambiguous and under our established law we must accept that reasonable interpretation which most favors the insured. *Freeman* v. *Commonwealth Life Ins. Co.* (1972), 259 Ind. 237, 286 N.E.2d 396.

Accordingly, we hold that the policy excludes coverage for an intentional act of the insured which was intended to cause injury. The latter intent may be established either by showing an actual intent to injure, or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law.

However, Neilsen urges that even under the standard we have accepted, he is entitled to the benefits of coverage because he intended self-defense rather than injury to Smolek.

We disagree. The question of self-defense is a standard of Neilsen's liability to Smolek. It presents an issue of motive or justification for an intentionally caused harm, but it does nothing to avoid the inference of intent to harm that necessarily follows the deliberate blow to Smolek's face.

We recognize that members of the public may well desire to protect themselves through the vehicle of insurance from the cost of defending liability actions where the facts may ultimately exonerate them.

We do not perceive that it would be a violation of public policy to permit an insurance company to defend an action where its insured is excused because he acted in self-defense. It would not even clearly be prohibited from indemnifying for damages caused where the insured actually, but unreasonably, believed the defense was necessary. However, to afford such coverage upon the basis

of the policy before us would not be to interpret its ambiguity. We would instead be rewriting the contract agreed to by the parties to provide an additional coverage. This we may not do. *Town & Country M.I. Co.* v. *Owens* (1968), 143 Ind. App. 522, 241 N.E.2d 368; *Metropolitan Life Ins. Co.* v. *Alterovity* (1938), 214 Ind. 186, 14 N.E.2d 570.

Accordingly, the decision is reversed with instructions to enter judgment for the company.

Staton, P.J., dissents with opinion; Hoffman, J., concurs.

### DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion. I would affirm the trial court's declaratory judgment on the duty to defend for three reasons.

First, the majority has determined witness credibility when it concluded that the intent to defend by striking back is an intent to injure. Neilsen testified that Smolek attacked him without any prior threat or use of force by Neilsen. (Tr. 184-85 also on cross-examination at TR. 186). He further testified that he did not intend to injure Smolek when he struck him. (Tr. 717). Smolek did not testify but was deposed. The trial court determined the credibility of the witnesses and weighed the evidence which is its function.

Second, by construing ". . . caused intentionally . . ." to include those acts done in self defense which result in injury, the majority has decided not only Home Insurance Company's duty to defend but Home Insurance Company's liability under the policy. If a jury would later find that Neilsen's striking in self defense was justified, Neilsen could not recover defense attorney fees. If a jury were to find the contrary, that the striking was not justified, no recovery could be had against the insurance policy.

Third, the insurance contract clause is ambiguous. It provides:

"(d) under Coverage G and H [comprehensive liability and medical payments] to bodily injury or property damage caused intentionally by or at the direction of the Insured;"

Its terms do not expressly exclude justifiable self defense bodily injury. Its terms can only embrace those bodily injuries which are deliberately perpetrated with preconceived designs and without legal justification. Justice Hunter, writing for the Indiana Supreme Court in *Freeman* v. *Commonwealth Life Ins. Co.* (1972), 259 Ind. 237, 286 N.E.2d 396, 397 wrote: "It is the rule, as the petitioner admits, that an ambiguous term in an insurance policy will be resolved in favor of the insured." I can not agree with the majority's conclusion that ". . . to afford such coverage upon the basis of the policy before us would not be to interpret its ambiguity. We would instead be rewriting the contract agreed to by the parties to provide an additional coverage." I would resolve the ambiguity in favor of the insured, Neilsen, and I would affirm the trial court's judgment.

NOTE.—Reported at 332 N.E.2d 240.