**INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, Appellant (Plaintiff Below),**

v.

**Mark BRANDUM, Rose Marie Jamison, Administratrix of the Estate of Steven Jamison, Deceased, Indiana Insurance Company, as Subrogee of Anna H. Peoni, Anna H. Peoni, Indianapolis Power & Light Company, and, Dave Allen, Appellees (Defendants Below).**

**No. 1-780A193.**

Court of Appeals of Indiana, First District.

April 21, 1981.

John A. Stanek, Auberry, Stanek & Perrin, Indianapolis, for appellant.

Rick D. Meils, Meils, Zink, Thompson & Glass, Marcus E. Woods, Christopher J. Weber, Indianapolis, for appellee Indianapolis Power & Light Co.

John Scott Langan, Sr., Davis & Davis, Indianapolis, for appellee Dave Allen.

ROBERTSON, Judge.

Indiana Lumbermens Mutual Insurance Company (Lumbermens) appeals the trial court's decision in a declaratory judgment action, which held the company liable under an automobile insurance policy for injuries to various third parties and their property after the insured deliberately rammed another vehicle with his car.

We affirm.

In March, 1978, Mark Brandum was a twenty-two year old college student who attended Indiana Central College. He lived

with his parents and had the use of his father's Buick. Lumbermens had issued an automobile insurance policy to Brandum's father covering the Buick and Brandum was insured under the policy.

Brandum had a history of mental illness, including two suicide attempts, and received psychiatric care at various times, but he was not under psychiatric care in March, 1978. Some of his problems were related to unsatisfactory relationships with women. At this time however, he was engaged to a woman who was employed at St. Francis Hospital in Beech Grove, Indiana. They had a tempestuous relationship and Brandum had pleaded guilty to a charge of battery in February 1978.

On March 23, 1980, Brandum went to pick up his fiancée after work at 11:45 P.M. He arrived at the hospital at approximately 10:30 P.M. and waited until midnight, but his fiancée did not appear. Brandum drove by her apartment and her parents' homes without finding her. He then returned to the vicinity of his fiancée's apartment and drove around for approximately a half an hour. At this time, he saw a car driven by an acquaintance, Steve Jamison, go into his fiancée's apartment complex. Brandum turned around, started to drive back to the apartment complex and saw Jamison's car drive away from his fiancée's apartment. Brandum stopped and knocked on the apartment door with no response, and again drove away. As Brandum drove down the street, Jamison pulled out of a side street approximately 1000 feet in front of him. Brandum followed the car, accelerating to catch it, and as he drew close to the car, his fiancée sat up in the front seat. She kissed Jamison and Brandum lost his temper and rammed the back of Jamison's car. Jamison fled and Brandum followed at a high rate of speed again ramming Jamison's car. Jamison again drove away and Brandum caught up again. He drove along side Jamison's car and turned into it, then he slowed and pulled in behind it. Jamison's car began to spin to the right and Brandum hit the left rear corner. Brandum drove on and the last time he saw Jamison's car it had made a 180 degree turn and was travel-ing backwards down the highway. Brandum saw a bright flash of light in his rearview mirror and realized there had been an accident. He went to the police and made a statement.

According to witnesses, Nancy Peoni, and David Allen, Jamison's car left the road, struck a utility pole, and landed on the car in which they were seated. Both cars burned and Jamison and Brandum's fiancée were killed. The utility pole landed on a car owned by Anna Peoni. Subsequently, Brandum pleaded guilty to two charges of involuntary manslaughter pursuant to a plea agreement.

This action was initiated by Lumbermens to determine if they are liable to Jamison's estate for his personal injuries and for property damage, and to determine if they are liable to defendants Peoni, Indianapolis Power and Light (IPL), and Allen for property damage resulting from the crash. The trial court granted summary judgment in favor of IPL, Indiana Insurance Company, as subrogee of Anna H. Peoni, and David Allen, on the theory that their injuries were not caused intentionally and therefore, did not fall within the scope of the following exclusionary clause in Lumbermens policy:

> Exclusions. This policy does not apply: . . . (b) to bodily injury or property damage caused intentionally by or at the direction of the insured;"

Lumbermens argues that Brandum intentionally struck Jamison's car and that they should not be responsible for Brandum's defense, and liable for resulting damages, because the exclusionary clause in their policy applies to all damages caused by Brandum's intentional acts. Lumbermens also argues in the alternative that they should not be liable because Brandum's conduct was such that his intent to cause the damages should be inferred from the circumstances. Finally, Lumbermens asserts that it would be against public policy to allow coverage.

The standard which Lumbermens advocates is essentially the same as the tort law standard applicable to intentional torts,

which makes a defendant responsible to an injured party for damages resulting from the defendant's intentional acts, even if the injured plaintiff is not the party which the defendant intended to injure. *See* W. Prosser, The Law of Torts (4 ed. 1971) p. 31–34. This viewpoint was examined and rejected by this court in the case of *Home Insurance Company v. Neilsen*, (1975) 165 Ind.App. 445, 332 N.E.2d 240. In that case the issue was whether the insurance company had a duty to defend their insured under a homeowner's policy against a third party in an assault and battery action. The policy contained an exclusionary clause, identical to the one in Lumbermens's automobile policy, limiting the insurance company's liability for intentionally caused injuries. Judge Garrard stated:

We think the better view requires more specificity to the intent for a party's conduct to fall within the exclusionary clause.

165 Ind.App. 449, 332 N.E.2d at 243.

■ Thus, we held that not only must an insured's acts have been intentional to preclude coverage, but the insured must also have intended to harm the party actually injured. It is possible to infer the intent to harm the injured party from the nature of the insured's acts. For example, in *Home Insurance Company*, the insured intentionally struck a third party and therefore, the intent to harm naturally followed. However, this inference should only be made, "where reason mandates that from the very nature of the act, harm to the injured party must have been intended." *Home Insurance Company v. Neilsen*, (1975) 165 Ind. App. 450, 332 N.E.2d 244.

■ In the case at bar, Brandum's actions were directed at individuals other than the appellees, and although it's clear he should have been cognizant of danger to third parties, it is equally clear that the very nature of his acts was not such that harm to the appellees must have been intended. For this reason it is possible to distinguish this case from *Kraus v. Allstate Insurance Company*, (W.D.Pa.1966) 258 F.Supp. 407, on which Lumbermens relies.

In that case, the insured under an automobile policy, which contained an exclusionary clause like the one at issue in this appeal, set off a dynamite charge in his car intending to kill his wife and himself, but also injuring third parties. The district court held there was no coverage because the insured intended to cause injury and for the additional reason that the use of the car as a bomb was not within the risks covered by the policy. It is clear that the facts in *Kraus* are not analogous to the case at bar because setting off dynamite in a crowded urban area will of necessity injure bystanders raising the inference that the insured intended to harm anyone nearby.

Lumbermens's assertion that it would be against public policy to allow coverage was also addressed in *Home Insurance Company to Lumbermens's* detriment:

Neither intent *qua* the act nor the intent to cause harm definition can be deemed unreasonable in light of public policy which recognizes the public benefit from liability insurance and yet dictates that a person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity.

Therefore, the policy language is arguably ambiguous and under our established law we must accept that reasonable interpretation which most favors the insured.

165 Ind.App. at 450, 332 N.E.2d at 244.

We agree with this reasoning and find no error in the trial court's award of summary judgment to the appellees.

Judgment affirmed.

NEAL, P. J., and RATLIFF, J., concur.