**Peter SANS, Appellant–Defendant,**

**Tick Tock Lounge, Inc. and Michael Elkins, Appellant–Defendant,**

v.

**MONTICELLO INSURANCE COMPANY, Appellee–Plaintiff.**

No. 49A02–9603–CV–147.

Court of Appeals of Indiana.

March 13, 1997.

Transfer Denied July 11, 1997.

---

James H. Young, Young & Young, William F. Thoms, Indianapolis, for Appellants–Defendants.

Kelly J. Pitcher, David M. Mattingly, Ice Miller Donadio & Ryan, Indianapolis, for Appellee–Plaintiff.

## OPINION

ROBERTSON, Judge.

Peter Sans, Michael A. Elkins, and the Tick Tock Lounge, Inc. appeal the summary judgment entered in favor of the Monticello Insurance Company [Insurance Co.]. We restate and consolidate the dispositive issue raised on appeal as:

whether the trial court correctly found that coverage was excluded under the insurance policy where the evidence in the light most favorable to the nonmovants indicates that Elkins did not intend to fire the gun.

We reverse.

## FACTS

The undisputed facts disclose that, on September 8, 1992, Elkins was working as a bartender employed by the Tick Tock Lounge and Sans was a patron of the lounge. Elkins ordered Sans out of the lounge. When Sans attempted to reenter the tavern, Elkins raised his arm, brandishing a .25 caliber handgun. The gun went off and the bullet struck Sans in the head causing serious personal injuries. The facts in the light most favorable to the nonmovants, as contained in Elkins' affidavit, are as follows:

5. I never intended to shoot Peter Sans or anyone else.

6. I did not intentionally shoot Peter Sans.

7. I did not intend to even fire the gun.

8. I hoped the presence of the gun would scare Mr. Sans but never intended to shoot Mr. Sans or even fire the gun.

9. The gun accidentally fired when I was raising my arms as Mr. Sans was reentering the tavern after he had been asked to leave.

10. I am the person that first called 911 emergency personnel to the scene of the accident.

11. I was acquitted of all charges arising from the shooting occurrence at the Tick Tock Lounge September 8, 1992, by a jury of my peers.

(Pertinent part only).

Sans sued Elkins and the Tick Tock Lounge, Inc. alleging that Elkins had "care-

lessly and negligently" shot Sans. Insurance Company brought the instant declaratory judgment action, and ultimately obtained summary judgment, on the basis that coverage was excluded under the policy because the shooting incident was not an occurrence (an accident neither expected nor intended from the standpoint of the insured), and because the incident fell under the following exclusion contained in a policy endorsement:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The policy does not define the term "assault and battery."

In granting summary judgment, the trial court entered the following findings:

> 4. The Court finds that [Elkins'] subjective intent as to the shooting is not material. Intent is a standard that is governed by the action of Elkins that can be determined as a matter of law by this Court.
> 5. As a matter of law, [Elkins'] expectation and intent to shoot Sans is inferred by [Elkins'] undisputed actions and the injury to Sans that was the actual consequence of his actions.

(Pertinent part only).[1]

## DECISION

As recently stated in *Stevenson v. Hamilton Mutual Insurance Company*, 672 N.E.2d 467 (Ind.Ct.App.1996), *trans. pending:*

> In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred.

The interpretation of a insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly well-suited for disposition by summary judgment. Where there is an ambiguity, policies are to be construed strictly against the insurance company. Strict construction against the insurer is 'driven by the fact that the insurer drafts the policy and foists its terms upon the customer.' The insurance companies write the policies; we buy their forms or we do not buy insurance. Thus, the insurance company is bound by the plain and ordinary meaning of the words viewed from the standpoint of the insured. However, there is no rule of construction that every term in an insurance contract must be defined, and the mere fact that a term is not defined does not render it ambiguous. Whether a contract is ambiguous is a question of law; and where the court determines there is no ambiguity, the terms of the contract are conclusive and the construction of those terms is also a matter of law to be determined by the court. An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. An ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation.

---

1. Trial court findings in summary judgment proceedings merely afford the reviewing court a statement of reasons for the trial court's actions, and serve no other purpose. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.*

An unambiguous policy must be enforced according to its terms, even those which limit the insurer's liability. Courts may not extend coverage delineated by the policy nor may it rewrite the clear and unambiguous language of the policy. However, an exclusionary clause will not be read so broadly as to effectively exclude all coverage.

Indiana courts have long upheld standard exclusionary clauses for the insured's intentional acts as in furtherance of the public policy that a person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity. As stated in R.E. Keeton & A.I. Widiss, *Insurance Law* (1988) § 5.4(d)(1):

> The principle that insurance should only be employed to transfer risks associated with fortuitous occurrences means that generally no coverage will exist for a loss that is caused intentionally. In the context of liability insurance, claims seeking indemnification for intentionally caused harm are usually denied on the basis of specific coverage terms—typically set forth in the basic definition of coverage—which state the insurer will pay damages for which an insured . . . becomes legally responsible *because of an accident*. Furthermore, liability insurance policies have generally included clauses that explicitly preclude coverage for an 'injury . . . caused intentionally.' For example, contemporary liability insurance policies frequently state that insurance is provided for damages that are caused by an 'occurrence' which is defined as an *'accident'* that 'results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured.'

> \*   \*   \*   \*   \*   \*

> Courts have clearly and repeatedly affirmed the general proposition that public policy prohibits the use of insurance to provide indemnification for civil tort liability that results from an insured's intentional wrongdoing.

[Keeton] at 518–19 (Emphasis original).

[We have] analyzed Indiana law with respect to standard 'intended or expected' exclusionary clauses, and noted:

> The intent aspect . . . contemplate[s] the 'volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs.' It is met either by showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law.

> 'Expected' injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions. However, the definition of 'expected' does not exclude harm that the insured 'should have anticipated, . . .' Consciousness of the likelihood of certain results occurring is determined by examination of the subjective mental state of the insured.

672 N.E.2d at 470–72 (Citations omitted).

■ The validity and enforceability of "assault and battery" exclusions, such as the one involved in the case at bar, is well-established. *See Franklin General Insurance Company v. Hamilton,* 126 Ind.App. 537, 133 N.E.2d 93, (1956); *Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208 (1994), *appeal discontinued; United National Insurance Company v. Tunnel, Inc.,* 988 F.2d 351 (2nd Cir.1993); *Wallace v. Huber,* 597 So.2d 1247 (La.App.1992); *Sphere Drake Insurance Company v. Ross,* 80 Ohio App.3d 506, 609 N.E.2d 1284 (1992); *Gregory v. Western World Insurance Company, Inc.,* 481 So.2d 878 (Ala.1985); *Thornton v. Illinois Founders Insurance Company,* 84 Ill.2d 365, 49 Ill.Dec. 724, 418 N.E.2d 744 (1981). However, as battery is necessarily an intentional act, a policy exclusion for assault and battery will substantially overlap with an exclusion for intentional acts. *Id.* at 747; *See also, United National Insurance Co.,* 988 F.2d at 353 (There is no such cause of action as negligent assault and battery; negligence and battery are mutually exclusive).

■ Insurance Company argues that Elkins' "self-serving" claim that the shooting was accidental is irrelevant to the issue of summary judgment and insufficient to create a genuine issue of material fact. Insurance Company argues "[d]espite [Elkins'] claimed lack of subjective intent, legal intent as a matter of law is established by objective fact and not by post-incident rationalizations." (Insurance Company's brief p. 8). Insurance Company argues that Elkins' intent to shoot the weapon (or commit a battery) must be inferred as a matter of law from the undisputed facts. We disagree.

■ Contrary to Insurance Company's apparent argument, Indiana does not endorse the 'natural consequences of the act' rule requiring the inference of intent as a matter of law. *See Home Insurance Company v. Neilsen,* 165 Ind.App. 445, 332 N.E.2d 240, 243 (1975). In fact, Indiana law requires a showing of "specificity to the intent" before insurance coverage will be denied under an exclusion for intentional conduct. *Id.* As stated in *Neilsen:*

> It is a much more narrow gauge that recognizes the correlation [between conduct and intent] only where reason mandates that from the very nature of the act, harm to the injured party must have been intended. A defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly.

*Id.* at 243–44. In *Neilsen,* we held that insurance coverage was properly excluded where the insured had admitted that he had intentionally struck the other man although he had not intended to cause injury. *Id.* Similarly, our supreme court has held that the intentional shooting of a gun into a crowd of people (with the intent to 'hurt somebody') constituted the commission of an act which any reasonable person would deem calculated to cause injury sufficient to justify exclusion of coverage under an insurance policy despite the insured's claim that he had not intended to hurt the victim. *Allstate Insurance Company v. Herman,* 551 N.E.2d 844, 845–46 (Ind.1990).

In *Franklin General,* 126 Ind.App. 537, 133 N.E.2d 93, an insured motorist intentionally began to back his car in order to 'playfully' tap the car behind him, not seeing that a person had placed himself between the two cars before it was too late to avoid pinning the person between the cars. The *Franklin* court stated the issue as follows:

> The crux of the question presented here in various ways by [the insurance company] is whether the above evidence leads solely and inescapably to the conclusion that the injuries suffered by [the victim] were the result of an assault and battery by [insured], within the meaning and provision of [the] policy of insurance.

*Id.* at 95. The *Franklin* court answered this question in the negative (upholding insurance coverage), stating:

> 'Intent on the part of the person charged, to apply the force constituting the battery is, however, an essential element of the offense and must be shown to make the touching criminally unlawful.
>
> 'But the intent may be inferred from circumstances which legitimately permit it. *Intent to injure may not be implied from a lack of ordinary care.* It may be from intentional acts where the injury was the direct result of them done under circumstances showing a reckless disregard for the safety of others, and a willingness to inflict the injury, or the commission of an unlawful act which leads directly and naturally to the injury.'
>
> It seems to us on the record herein that while it may be conceded [insured] did not use ordinary care and was negligent, the evidence does not lead inescapably to the sole conclusion his conduct showed such an intent or reckless disregard for the safety of others and willingness to inflict the injury that would require us to hold that, as a matter of law, he was guilty of assault and battery.

*Id.* at 96 (Emphasis original, citations omitted). Similarly, in *Denman v. State,* 432 N.E.2d 426, 434 (Ind.Ct.App.1982), we reversed a conviction for battery where a drunk driver caused multiple fatalities in an automobile collision, noting:

Lack of ordinary care is not sufficient to establish the intent or knowing elements of battery.

Here the State proved Denman was intoxicated and driving an automobile. They showed he was driving in a somewhat reckless manner. Such conduct we believe would support an inference of recklessness or engaging in conduct in an unjustifiable disregard of the harm that might result, deviating substantially from acceptable standards of conduct. However, his reckless operation of a vehicle and unjustifiable disregard of the consequences do not amount to the engaging in a touching with the awareness of a high probability he is doing so.

... That he deliberately 'took the risk,' that he thought there was some increased likelihood of harm, does not alter the basic fact that he believed that no harm would actually be committed.... This is insufficient to support an inference of knowingly. We reverse the guilty findings on the battery counts.

432 N.E.2d at 434.

In the present case, we are not prepared to hold, as a matter of law, that a .25 caliber handgun cannot "go off" accidentally, but will only operate to carry out the specific intentions of the person holding it. Although, by intentionally brandishing the firearm, Elkins may have been reckless and acted in an unjustifiable disregard of the harm that might result, the facts in the light most favorable to the nonmovants do not lead inescapably to the conclusion that the shooting was intentional, that is, that the shooting could not have been an accident which was neither expected nor intended. Nor does the evidence in the light most favorable to the nonmovants necessarily establish that the shooting constituted an assault and battery. That Elkins took a risk increasing the likelihood of harm does not establish the "specificity to the intent" required for Insurance Company's entitlement to summary judgment. *See Neilsen*, 332 N.E.2d at 243.

The present case turns upon a genuine issue of material fact—the determination of Elkins' subjective intent or state of mind (ultimately credibility). As stated in *Nelson v. Jimison*, 634 N.E.2d 509 (Ind.Ct.App. 1994):

> Summary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony. Mere improbability of recovery at trial does not justify the entry of summary judgment against the plaintiff. On a motion for summary judgment, the evidence must be construed in favor of the nonmovant, and any doubt about the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.* at 512 (Citations omitted) (Factual issue was whether defendant consciously acted dishonestly); *See also Jackson v. Gore*, 634 N.E.2d 503, 505 (Ind.Ct.App.1994) (Factual issue was whether waitress had actual knowledge of tavern patron's intoxication).

Judgment reversed.

SHARPNACK, C.J, and BAKER, J., concur.