**Susan COY, individually and as biological mother of Melissa K. Coy, Appellant–Defendant,**

v.

**NATIONAL INSURANCE ASSOCIATION, Appellee–Plaintiff.**

No. 49A02–9810–CV–777.

Court of Appeals of Indiana.

July 23, 1999.

Rehearing Denied Aug. 28, 1999.

357

John D. Boren, Boren & Oliver, Martinsville, Indiana, Attorney for Appellant.

James W. Treacy, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

MATTINGLY, Judge

Susan Coy, individually and as biological mother of Melissa K. Coy (Coy), appeals the trial court's judgment in favor of National Insurance Association (National) on Count II of its Complaint for Declaratory Judgment.[1] She raises one issue, which we restate as whether the trial court erred when it found that National's insurance policy with Daniel Adams excluded from coverage certain damages which resulted from acts which were caused intentionally by or at the direction of the driver.

National, in turn, appeals the trial court's judgment in favor of Coy on Counts I and III of National's Complaint for Declaratory Judgment. National raises two issues on cross-appeal, which we restate as follows:

1. Whether the trial court erred in finding that the driver was a resident of the insured's household; and

2. Whether the trial court erred in finding there was no material misrepresentation in the insured's application for insurance.

We affirm in part and reverse and remand in part.

1. National's declaratory action included the following persons as defendants: Susan Coy, individually and as biological mother of Melissa K. Coy; John Doe Coy, individually and as biological father of Melissa K. Coy; Daniel Adams; Robert Adams; and Evelyn Adams. Only Susan Coy is appealing the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On March 12, 1992, Robert Adams (Robert) stole an automobile belonging to his grandmother, Evelyn Adams. Although the car was titled in Evelyn's name, Robert's father Daniel Adams (Daniel) insured and regularly drove the vehicle. Robert and his girlfriend Melissa Coy (Melissa) drove the car to North Carolina.

After leaving a service station on March 13, 1992, without paying for gas, Robert and Melissa became involved in a high-speed police chase in Pender County, North Carolina. During the chase, Robert drove at speeds between 85 and 100 miles per hour, switched lanes, and drove toward oncoming traffic. At one point during the chase, Robert kissed Melissa and asked "What if we die?", to which Melissa replied "It does not matter as long as we are together." The chase ended when the automobile Robert was driving collided with another vehicle, flipped, and struck a telephone pole. Melissa died from injuries she sustained in the accident. As a result of the accident, Robert entered a plea of guilty to involuntary manslaughter.

Susan Coy, Melissa's mother, filed a lawsuit against Robert. National in turn filed a declaratory action to determine its liability on an insurance policy it had issued to Daniel. National's Amended Complaint contained three separate counts: Count I, that Robert's actions were not covered by the policy because Robert was not a named insured, a relative, or other person using the automobile with permission; Count II, that the damages which resulted from Robert's actions were caused intentionally and therefore excluded from coverage by the policy; and Count III, that Daniel's policy was void because he did not list Robert as a member of the household on the application for the policy.

National moved for summary judgment on all three counts. The trial court granted National's motion for summary judgment on Count II, finding that Robert's actions were intentional and thus excluded from coverage under Daniel's policy. This court reversed that finding in a memorandum decision on August 27, 1998. Thereafter, following a bench trial, the trial court entered a final judgment in favor of National on Count II of its Complaint, finding that Robert's acts were intentional and thus excluded from coverage. The trial court found in favor of Coy on Counts I and III. This appeal ensued.

## STANDARD OF REVIEW

■ Declaratory orders, judgments, and decrees have the force and effect of final judgments and are reviewed in the same manner as any other order, judgment or decree. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380 (Ind.Ct.App. 1997). In reviewing a judgment, we determine first whether the evidence supports the findings and then whether the findings support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied*. The judgment will be reversed only when it is clearly erroneous; that is, when the judgment is unsupported by the findings of fact and conclusions thereon. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App. 1991), *trans. denied*. In determining whether the findings and judgment are clearly erroneous, we will not reweigh the evidence or assess the credibility of witnesses; rather, we will consider only the evidence most favorable to the judgment and all reasonable inferences arising therefrom. *Id.*

## DECISION AND DISCUSSION

1. *Exclusion of Coverage for Intentional Acts*

■ Coy contends the trial court erred by finding in favor of National on Count II of its Complaint, which asserted that its policy excluded coverage for Robert's actions. National's insurance policy with Daniel contained a provision which excluded coverage for "bodily injury or property damage caused intentionally by or at the direction of the insured." R. at 26. Where an insurance policy excludes coverage for an intentional act of the insured, the intent of the insured may be established either by showing an actual intent to injure or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law. *Home*

*Ins. Co. v. Neilsen,* 165 Ind.App. 445, 451, 332 N.E.2d 240, 244 (1975).

The trial court's judgment in favor of National on Count II of its Complaint states, in pertinent part:

On March 13, 1992, Robert Adams and Melissa Coy stopped for gasoline at a gas station in Pender County, North Carolina, and drove off without paying. Officer Cutler of the Pender County Sheriff's Department, received the report, identified the vehicle on Highway 17 and pulled the car over into a parking lot. When Officer Cutler got out of his marked patrol car, Robert Adams exited the parking lot and fled down Highway 17. In the ensuing high speed chase, Robert Adams drove in excess of 100 miles per hour, passed other cars in no passing zones, and crossed the center line in the face of oncoming traffic. He eventually struck another car, then flipped over and struck a utility pole. Melissa Coy died as a result of her injuries.... **IT IS THEREFORE OR-DERED, ADJUDGED AND DECREED** ... that Judgment be entered in favor of [National] and against [Coy] on Count II of [National's] Complaint.

R. at 61 (emphasis in original). This order makes no specific finding that Robert had an actual intent to harm Melissa or that such intent can be inferred as a matter of law.

### a. *Actual Intent*

■ Our review of the record reveals no direct evidence to support an inference that Robert had an actual intent to injure Melissa. Rather, the evidence supports the opposite inference. Robert testified that he did not intend to kill Melissa while they were trying to evade police.[2] Robert and Melissa were

not carrying out a suicide pact; rather, they intended to evade police so they could travel to Maine and get married. Both Robert and Melissa were wearing their seat belts throughout the police chase, further evidencing their desire to remain safe. Therefore, the evidence does not support a conclusion that Robert possessed an actual intent to harm Melissa.

### b. *Inferred Intent*

■ As we noted in *Neilsen,* intent to injure can be inferred in certain situations where actual intent cannot be shown, if the nature and character of the act are such that intent to cause harm must be inferred as a matter of law. 165 Ind.App. at 451, 332 N.E.2d at 244.[3] This rule applies only where reason mandates that from the very nature of the act, harm to the injured party must have been intended. *Id.* at 450, 332 N.E.2d at 243–44. The word intentional "refers ... to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." *Id.* at 448, 332 N.E.2d at 242. Our supreme court has held that conduct falls within an insurance policy's intentional act exclusion where an insured "deliberately commit[s] an act which any reasonable person would deem calculated to cause injury." *Allstate Ins. Co. v. Herman,* 551 N.E.2d 844, 846 (Ind.1990).

■ Relying on the holdings in *Neilsen* and *Herman,* National argues that Robert's actions were of such a nature and character that intent can be inferred as a matter of law:

Here, the undisputed evidence shows that Robert intended to evade the police and

R. at 117.

---

**2.** The only direct evidence before the trial court relevant to Robert's actual intent was Robert's deposition, in which the following testimony was given:

Q. Did you ever intend, in anyway [sic], to hurt Melissa?
A. No.
Q. Did you have any intention of hurting the man in the other vehicle?
A. No.
Q. You certainly did not mean to kill anybody; did you?
A. No.

**3.** Indiana courts have inferred such an intent to cause injury in several cases: *See, e.g., Allstate Ins. Co. v. Herman,* 551 N.E.2d 844 (Ind.1990) (where insured intentionally fired a gun into a fleeing crowd of people); *Evans v. National Life Acc. Ins. Co.,* 467 N.E.2d 1216 (Ind.Ct.App.1984) (where insured shot a person in the back and then kicked him in the head); *Heshelman v. Nationwide Mut. Ins. Co.,* 412 N.E.2d 301 (Ind. Ct.App.1980) (where insured punched and injured a party during a dispute).

intended to commit any acts necessary to do so. Although he may not have specifically intended to harm Melissa, he did intend to do whatever was necessary to escape, including injuring himself, Melissa, or someone else. Robert [knew] that his actions could result in his death or Melissa's death, as reflected by his statement that he kissed Melissa goodbye "in case of an accident." His intentional acts of high speeds, crossing the center line in the path of oncoming traffic, and passing cars in no passing zones are such egregious acts that intent can be inferred as a matter of law. Any reasonable person would deem his actions calculated to cause injury or death.

Brief of Appellee at 10–11 (citations omitted). National seems to equate Robert's reckless actions with an intent to cause harm or injury to Melissa. We do not.

In *Indiana Farmers Mut. Ins. Co. v. Graham,* this court analyzed an insurance policy which excluded bodily injury that was either "expected or intended from the standpoint of the Insured." 537 N.E.2d 510, 511 (Ind.Ct. App.1989). Noting that a greater degree of proof is required to establish intent than to establish expectation, we held that the term "expected" excluded liability coverage for conduct which was "practically certain" to result in injury but did not exclude conduct which the insured only should have anticipated. *Id.* at 512.

■ This court has also held that negligent or even reckless conduct is not enough to meet the "practically certain" standard required for an insurance policy to exclude expected injuries. *Bolin v. State Farm Fire and Cas. Co.,* 557 N.E.2d 1084, 1088 (Ind.Ct. App.1990). Thus, a showing of disregard for safety is not enough to warrant exclusion under either the lesser "expected injuries"

standard or the greater "intended injuries" standard.[4]

No evidence in the instant case permits an inference that Robert's actions were performed with the intent to harm Melissa. While Robert was fleeing from police, he violated numerous traffic laws and drove in a negligent and reckless manner. However, driving negligently or recklessly is not a situation where reason mandates that the driver must have intended to harm his passengers. Harm to Melissa was not the intended result of Robert's actions; rather, the harm was an unintended consequence of Robert's intended act (i.e., evading the police).[5] We conclude, as we did in our previous memorandum decision, that Robert's actions cannot support the inference that he intended to cause harm to Melissa. The trial court had insufficient evidence to find that the exclusion in the policy for intentional acts applied in this case. Thus, its finding on Count II of National's Complaint for declaratory judgment is contrary to law. We reverse this portion of the trial court's ruling and remand.[6]

### 2. *Policy Definition of Relative*

■ On cross-appeal, National argues that the trial court erred in entering judgment against it on Count I of its Complaint, which claimed that Robert was not covered under Daniel's insurance policy because Robert did not fit the policy's description of a relative of the named insured. National's policy with Daniel contained the following provision:

Part I - Liability

Persons insured. The following are insured under Part I:

a. with respect to the owned automobile,

---

4. If National wished to exclude injuries caused by reckless driving, it was free to include language to that effect in its insurance policy. Instead, National's exclusion is for injuries intentionally caused by an insured.

5. It seems logical to assume that, if Robert had actually intended to harm Melissa, he would have deliberately had a collision rather than engage in risky driving maneuvers in an attempt to escape police.

6. The case before us is a declaratory action and involves only the question of whether National is obligated to provide coverage for Robert's actions. Our holding in this case should not be construed as expressing any opinion about Coy's underlying damages action against Robert or about any of the legal issues or defenses which might be presented in that action.

(1) the named insured and any relative,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission ...

Definitions. Under Part I:

"relative" means a relative of the named insured who is a resident of the same household.

R. at 26.

In its judgment, the trial court found that Robert, although legally in the custody of his mother, was residing with his father Daniel and his grandmother Evelyn after 1991. *Id.* at 60. The trial court entered judgment against National on Count I of its Complaint.

 Residency status as it relates to determining coverage under a liability insurance policy is ultimately a question of fact. *Jones v. Western Reserve Group/Lightning Rod Mut. Ins. Co.*, 699 N.E.2d 711, 717 (Ind. Ct.App.1998). The term "resident" is to be given a broad meaning in cases involving the extension of coverage to someone other than the named insured. *Aetna Cas. & Sur. Co. v. Crafton*, 551 N.E.2d 893, 895 (Ind.Ct.App. 1990).

 In determining residency status under an automobile insurance liability policy, we consider the following factors: 1) whether the claimant maintained a physical presence in the named insured's home; 2) whether he possessed the subjective intent to reside therein; and 3) the nature of the access to the named insured's home and its contents. *Jones*, 699 N.E.2d at 714. The finder of fact must also consider all of the evidence which is indicative of the claimant's living habits. *Id.* at 714–15.

Conflicting evidence was presented to the trial court. Robert's parents were divorced when he was five years old. His mother was granted custody of Robert. However, from age five until age ten, Robert lived with his father. From age ten to age twelve, he lived with his mother. From age twelve until the date of the accident, Robert lived with his father and his grandmother. Robert had a bedroom at this residence and slept there almost every night, except for an occasional weekend visit to his mother's. Robert kept his clothing and his personal belongings at this house. He received his mail at this house. Robert used his father's address when he registered to vote and when he registered for the selective service. Robert met the school bus at his father's house.

National contends that Robert did not maintain anything more than a physical presence from time to time in Daniel's home for some months before the accident occurred. Brief of Appellee at 14. Evidence was presented that Robert had spent almost every day in the month preceding the accident living in the woods. Two months before that, Robert was incarcerated for a time in the Morgan County Jail. However, we do not find this evidence demands a conclusion that Robert was not a resident of Daniel's household. We must decline National's invitation to reweigh the evidence and overturn the trial court's conclusion.

### 3. *Voiding of Policy Due to Misrepresentation*

 National argues that the trial court also erred in entering judgment against it on Count III of its Complaint, which concerned an alleged misrepresentation made by Daniel on his application of insurance. National contends that if we determine Robert was a member of Daniel's household, then Daniel's alleged material misrepresentation on his application would void his coverage. On September 22, 1990, Evelyn signed an application for Daniel to obtain automobile insurance. This application listed Daniel as the named insured. The application requested the names of all persons over 14 years of age who resided in the insured's household, whether those persons were licensed to drive or not. The only person listed on Daniel's application for insurance was his mother, Evelyn. At that time, Robert was 17 years old and lived in Daniel's house.

At the bottom of the application is a second signature line, which requires the selling agent to certify that he or she has advised the applicant that failure to disclose all acci-

dents, violations, and drivers can jeopardize insurance coverage. On National's home office copy, there is a signature on this line. However, on the agent's copy of the same agreement, the signature line is blank. The first application for insurance covered the dates from September 22, 1990 through March 22, 1991. Daniel signed another application on March 28, 1991. However, the residency box on this application had been left blank. No agent from National certified that he or she had advised Daniel of the consequences of misrepresentation on this form. Daniel continued to renew his policy. His last policy with National covered March 13, 1992, the day of Robert's accident. However, National did not produce the application or renewal form completed or signed by Daniel for the period covering the date of the accident.

Generally, a material misrepresentation or omission regarding substantial factors affecting the nature of a risk voids any mutuality of understanding between the parties and renders an insurance contract voidable by the insurer. *See Curtis v. American Community Mut. Ins.*, 610 N.E.2d 871, 874 (Ind.Ct.App.1993). However, an insurer may not rescind a policy on the ground of fraud or misrepresentation of the insured so as to escape liability to third parties. *See American Underwriters Group, Inc. v. Williamson*, 496 N.E.2d 807, 810–11 (Ind.Ct. App.1986).[7] Thus, National cannot void its coverage based on any alleged misrepresentation on Daniel's part solely for the purpose of avoiding liability for damages to Melissa.

Further, the trial court found that "[n]o agent on behalf of [National] signed the application to certify to the fact that Daniel or Evelyn was informed about the possible consequences of misinforming the insurance company." R. at 60. There is sufficient evidence in the record to support this finding. National did not produce the application in effect on the date of the accident, on which application it claims Daniel made a material misrepresentation which would void his coverage. Further, on Daniel's earlier applications, no agent's signature certifying that the insured has been informed about possible consequences of misrepresentation appears on the agent's copy of the application. These facts are sufficient to support the trial court's finding.

We reverse the trial court's judgment on Count II of National's Complaint and remand for further proceedings. We affirm the trial court's judgment in all other respects.

SULLIVAN and RILEY, JJ., concur.

---

7. *Williamson* reasoned that allowing insurance carriers to void coverage based on misrepresentations of the insured would contravene the goals of the Indiana Financial Responsibility Act, Ind. Code § 9–25–4–1 *et seq.*, to provide a source and means of recovery to persons who suffer loss due to automobile accidents. 496 N.E.2d at 810. Subsequent decisions by this court have held that insurers can void coverage when the third party has uninsured motorist coverage. *See Federal Kemper Ins. Co. v. Brown*, 674 N.E.2d 1030 (Ind. Ct.App.1997), *trans. denied; Motorists Mut. Ins. Co. v. Morris*, 654 N.E.2d 861 (Ind.Ct.App.1995). A federal court applying Indiana law has held that insurers can void coverage above the minimum levels required by the Financial Responsibility Act. *Pekin Ins. Co. v. Super*, 912 F.Supp. 409 (S.D.Ind.1995).

Our supreme court has recently acknowledged some question about whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists. *See Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind.1997) ("We leave for another day whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists. This issue is not settled under current precedent but is neither presented under these facts nor argued by the parties.").

In the instant case, there is no evidence that Melissa was covered by any other insurance, including uninsured motorist insurance. We choose to follow our previous holdings, which preclude an insurer from denying coverage in cases like these.