**John HEILIGENSTEIN, Appellant–Respondent,**

v.

**Celestine (DeTrana) MATNEY, Appellee–Petitioner.**

No. 49A05–9706–CV–225.

Court of Appeals of Indiana.

Feb. 26, 1998.

---

Andrew Z. Soshnick, Alan L. Mclaughlin, Baker & Daniels, Indianapolis, for Appellant–Respondent.

Monty K. Woolsey, Miroff, Cross & Klineman, Indianapolis, for Appellee–Petitioner.

## OPINION

BARTEAU, Judge.

John Heiligenstein appeals the trial court's judgment which was rendered after a hearing on his petitions for modification of child support payments and custody rights. We restate the issues Heiligenstein has raised for our review:

    1. Did the trial judge err when, directly after the hearing, he orally delivered his decision to the parties?

    2. Did the trial judge properly deny Heiligenstein's petition for modification of custody rights?

    3. Did the trial judge properly deny Heiligenstein's petition for modification of child support payments?

    4. Did the trial judge properly order Heiligenstein to pay attorney fees of $8000?

Celestine Matney cross-appeals. We restate the issues she has raised for our review:

    1. Did the trial judge properly order Heiligenstein to pay only one-half of future child care expenses?

    2. Did the trial judge implement a proper method of calculating child care expenses?

Affirmed in part, reversed in part, and remanded.

### FACTS

Heiligenstein and Matney were married in 1982, and their marriage was dissolved in 1992. Pursuant to an agreement which was approved by the dissolution court, Heiligenstein and Matney were to share joint custody of their two minor sons, and Matney's primary residence was to be the sons' primary residence. On August 1, 1995, Heiligenstein filed a "Verified Petition to Modify Decree" in which he requested that his child support obligation be modified. On September 16, 1996, Heiligenstein filed a "Verified Petition for Modification of Custody and Consolidation of Issues" in which he requested modification of the existing custody arrangement. An evidentiary hearing on these petitions was held on March 7, 1997. At the end of this hearing, the trial judge read aloud, in open court, his decision which included findings of fact and conclusions of law. On March 10, 1997, the trial judge issued his written "Findings of Fact[,] Conclusions and Judgment" (hereinafter "Judgment"). The content of the March 10 written Judgment is not identical to that of the March 7 orally-delivered decision; the March 10 Judgment not only sets forth most of the March 7 decision, but also includes additional legal analysis.[1] Heiligenstein and Matney now appeal the Judgment, which contains the following rulings:

    The court now finds that [Heiligenstein] has failed to meet the burden of proof. Therefore [Heiligenstein's] request to modify custody is denied.

    . . . .

    It is further found, that support modification shall [be] denied except that from this time forward [Heiligenstein] shall pay ½ of child care determined to be an amount equal [to] the number of hours the parties['] children are actually in child care multiplied by 2 times the per child rate.

    It is further found, that [Heiligenstein] shall pay [Matney's] attorney the sum of $8,000.00.

R. 262.

### STANDARD OF REVIEW

◼ Before the hearing on Heiligenstein's petitions, Matney requested findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. R. 259, 274–75. Our standard of review is therefore two-tiered. "We first determine whether the evidence supports the

---

1. *See* R. 631–36, 260–62.

findings of fact and then whether those findings support the judgment." *Culley v. McFadden Lake Corp.,* 674 N.E.2d 208, 211 (Ind.Ct.App.1996). "The trial court's findings and judgment which flow therefrom will not be set aside on appeal unless they are clearly erroneous." *Id.* "Findings of fact are clearly erroneous if the record contains no facts which support the findings either directly or by inference." *Id.* "The judgment is clearly erroneous if it is unsupported by the findings of fact and the conclusions which rely on those findings." *Id.* "In determining whether the findings and judgment are clearly erroneous, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence and reasonable inferences therefrom which support the judgment." *DeHaan v. De-Haan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App. 1991). "The purpose of making findings of facts and conclusions of law is to provide the parties and the reviewing courts with the theory upon which the case was decided. Such findings effectively preserve the right of review for error." *Sandoval v. Hamersley,* 419 N.E.2d 813, 816 (Ind.Ct.App.1981).

### TIMING OF THE ORALLY–DELIVERED DECISION

■ The record indicates that, immediately after the evidentiary hearing, the trial judge orally delivered his decision to the parties.[2] Heiligenstein suggests that the trial judge, by rendering his decision so soon after the hearing ended, could not have evaluated the evidence. Heiligenstein then seems to argue that, if the evidence was not evaluated, then he was denied the right to present evidence, and reversible error has therefore occurred.

We fail to find error here. Even if we were to agree that a litigant's right to pres-

ent evidence is denied when a trial judge does not evaluate the evidence, we would nevertheless refuse to hold that a trial judge could not have evaluated the evidence when he renders a decision immediately after a hearing. Heiligenstein has not presented, and we cannot find, any Indiana authority which holds that evaluation of evidence cannot have occurred when a decision is rendered immediately after an evidentiary hearing. In the absence of such authority, we refuse to assume that evaluation of the evidence did not occur here, especially when the trial judge's orally-delivered decision notes that "evidence was submitted to the Court" and that "[t]he Court having considered the evidence now finds as follows[.]" R. 632. We therefore hold that the timing of the trial judge's decision did not deny Heiligenstein the right to present evidence.

### PETITION FOR MODIFICATION OF CUSTODY RIGHTS

■ "The court may not modify a child custody order unless: (1) it is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors which the court may consider under [Indiana Code Section 31–1–11.5–21(a) ]." Ind.Code § 31–1–11.5–22(d) (current version at Ind.Code § 31–17–2–21(a)(1)–(2)). "In making its determination, the court shall consider the factors listed under [Indiana Code Section 31–1–11.5–21(a) ]." Ind.Code § 31–1–11.5–22(e) (current version at Ind.Code § 31–17–2–21(b)). Among these factors are:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

---

**2.** The parties dispute whether the trial judge's decision was rendered immediately after the evidentiary hearing. According to Heiligenstein, "[i]t is irrefutable that the trial court read its judgment immediately at the close of evidence." Brief of Appellant at 20. But according to Matney, "[a]t the conclusion of the hearing, although not noted in the Record, the court had the parties wait for an unknown period of time before orally announcing its anticipated decision." Brief of Appellee Celestine (DeTrana) Matney at 16. We note that the record indicates no pause

or recess between the end of the evidentiary hearing and the announcement of the trial judge's decision. R. 630–32. We therefore assume that the trial judge rendered his decision immediately after the evidentiary hearing. *See In re Marriage of Snemis,* 575 N.E.2d 650, 655 (Ind.Ct.App.1991) (noting that "[w]e must limit our review to the record before us" and that "in our consideration of a case we may not receive information as to the proceedings below except from the transcript of record.").

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

Ind.Code § 31–1–11.5–21(a) (current version at Ind.Code § 31–17–2–8). "[I]nherent in a custody modification proceeding is the issue of visitation." *In re Marriage of Ginsberg*, 425 N.E.2d 656, 659 (Ind.Ct.App.1981). "A trial court may change visitation when such change is in the childrens' [sic] best interests." *Huffman v. Huffman*, 623 N.E.2d 445, 448–49 (Ind.Ct.App.1993). "[C]ontinuity in custody remains a key element in determining the best interests of a child." *Wallin v. Wallin*, 668 N.E.2d 259, 262 (Ind.Ct.App. 1996). "[A] trial court must ... balance the effects of a change in custody with the effects of maintaining the *status quo*." *Dwyer v. Wynkoop*, 684 N.E.2d 245, 249 (Ind.Ct.App. 1997), *trans. denied.*

■ Heiligenstein claims that the trial court resolved the issues raised in his petitions by applying an erroneous legal standard. He finds support for this claim in the Judgment rendered by the trial judge, and in remarks made by the trial judge at the evidentiary hearing's opening.

In our view, the trial judge's remarks[3] do not compel a conclusion that an inappropriate legal standard was applied to the evidence. What a trial judge says during an evidentiary hearing is not necessarily indicative of the legal standard he will apply once all of the evidence has been presented to him. A trial judge's understanding of the applicable legal standard may change during the course of, or after, an evidentiary hearing. Only an examination of a trial judge's final decision can clearly reveal which legal standard was applied to the evidence. Our determination of whether a proper legal standard was utilized is therefore guided by an examination of the final decision which is contained in the trial court's Judgment.

According to Heiligenstein, an examination of the Judgment reveals that the trial judge applied an erroneous legal standard. Correctly noting that the issue of visitation is always before the court during custody modification proceedings, Heiligenstein claims that the court did not consider whether he was entitled to more visitation with his children. But we do not believe this claim is accurate, for the Judgment shows that the trial court did consider Heiligenstein's visitation rights.[4] Because the trial judge recognized his legal obligation to consider the visitation issue, we cannot say that he applied an inappropriate legal standard to the evidence.

■ Heiligenstein also argues that a proper consideration of visitation could not have occurred because, he seems to claim, the trial judge did not evaluate visitation solely in light of the "best interests" standard. Heiligenstein's claim is not without merit. The trial judge may have held that visitation could not be modified unless it was

---

**3.** At the evidentiary hearing's opening, the trial judge said:

   I will advise both parties that ... I will require a strict meeting of the burden of proof in modification cases. I do not believe that modification should be granted just because they're [sic] filed, I don't believe modification should be granted as a matter of course. I do believe ... consistence [sic] of the orders is important both for the families and for the Court and I will strictly require the parties to meet their burden of proof in modification cases.... I'm not going to be changing custody and modifying orders on minimal matters. It's a very high burden, it's very disruptive to the parties and the children and ... I will require a strict showing before I grant any modifications and

a strict meeting of whatever burden of proof is required.
   R. 279–80.

**4.** In the Judgment, the trial judge notes that:

   [Heiligenstein] wants to spend more time with the children. They would probably benefit from additional time with the non custodial parent. Of course barring evidence of harm or abuse to the child this is universally true. Unfortunately when parents choose to divorce there are going to be differences in the relationships between them and their children. [Heiligenstein's] evidence is merely a recognition of this truth.
   R. 261–62.

in the children's best interests and unless there had been a substantial change in at least one of the factors set forth in Indiana Code Section 31–1–11.5–21(a). If the trial judge held this, then he applied an erroneous legal standard to the issue of visitation change, which is to be evaluated solely in light of what serves a child's best interests. Ind.Code § 31–1–11.5–24(b) (current version at Ind.Code § 31–17–4–2). But to the extent that the trial judge might have evaluated the visitation issue under a standard other than "best interests," it is unlikely that the error resulted in prejudice to Heiligenstein. The Judgment indicates that it may be in a child's best interest to maintain stability in his life. R. 261 (noting that "[s]tability and finality are considerations of the court in evaluating ... the child's best interest."). The Judgment also indicates that maintaining stability was among the grounds on which Heiligenstein's custody modification petition was denied. It is therefore clear that, even if "best interests" had been the only legal standard applied, the trial judge could still have concluded that modification of visitation arrangements was stability-threatening and was therefore not in children's best interests. We fail to find reversible error here.

Heiligenstein next claims that the Judgment's legal standard places too much emphasis on "stability." But we are convinced that the concept of stability receives a proper amount of emphasis in the Judgment, which consistently indicates that maintaining stability is among the factors relevant to a "best interests" determination. Even if the trial judge made stability a significant component of his inquiry into what was in the children's best interests, he was entitled to do this. See Dwyer, 684 N.E.2d at 248–49 (noting that "maintaining stability in a child's life is ... a significant component of a best interests determination.").

■ Heiligenstein has observed that the Judgment cites authorities which contain a superseded legal standard. Although Heiligenstein's observation is accurate, there is no error here. The trial judge realized that a superseded legal standard was contained in some of the authorities he cited. "Prior to July 1, 1994, a trial court could modify a custody arrangement 'only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.'" Wallin, 668 N.E.2d at 260 (quoting Lamb v. Wenning, 600 N.E.2d 96, 98 (Ind.1992)). "Effective July 1, 1994, however, our legislature moved away from the long-standing, rather stringent standard by amending [Indiana Code Section 31–1–11.5–22(d)]...." Wallin, 668 N.E.2d at 260. That the trial judge was aware of this change in legal standard is apparent from the Judgment which states that "the statute governing modification has changed.... The burden [of proof] is still high whether under the current legislation or the former which required a substantial and continuing change of circumstances making the current order unreasonable." R. 261 (emphasis deleted). Because the trial judge acknowledged the change of legal standard, and because the Judgment accurately sets forth the current legal standard,[5] we refuse to hold that an erroneous legal standard was applied to the evidence.

■ Heiligenstein challenges the Judgment's Finding 11, which relates to the testimony of Dr. Linn LaClave. Finding 11 states in part:

In [Dr. LaClave's] opinion predictability and stability are important in a child feeling secure. She believes children need a home base. She thinks alternating homes weekly would not allow children this stability.

R. 260. Heiligenstein seems to claim that this finding is clearly erroneous, but we do not believe that this claim is accurate because Finding 11 is supported by the evidence of record.[6]

5. The Judgment states that a child custody order will not be modified unless the elements set forth in the current version of Indiana Code Section 31–1–11.5–22(d) are satisfied. R. 261.

6. At the hearing, the following colloquy occurred between Dr. LaClave and counsel:

[Counsel:] ... [D]o you have a general opinion about the effect of frequent relocations of children back and forth between homes of divorced parents?
[Dr. LaClave:] ... I think relocation is always difficult for children.... I think that children do better when they can predict what's going to happen to them, where they're going to be.

■ Heiligenstein also seems to claim that the trial court should not have credited Dr. LaClave's testimony. Heiligenstein argues that the recommendations contained in Dr. Jonni Gonso's report[7] were entitled to more credit than were Dr. LaClave's opinions. Heiligenstein correctly observes that, while Dr. LaClave's opinions were not about the sons of Heiligenstein and Matney, but were instead about children in general, Dr. Gonso's recommendations relate specifically to the parties and were based on personal observation of Heiligenstein, Matney, and their sons. Although Heiligenstein's observations are accurate, the trial judge was nevertheless free to credit Dr. LaClave's opinions and to discount Dr. Gonso's recommendations. *Cf. Periquet–Febres v. Febres,* 659 N.E.2d 602, 607 (Ind.Ct.App.1995) (holding that "[t]he trial court was free to reject the testimony of the psychologist as to what custody arrangement was in [the child's] best interest and to make its own determination based upon all of the evidence before it.").

### PETITION FOR MODIFICATION OF CHILD SUPPORT

■ Heiligenstein's petition for modification of child support was disposed of by the Judgment in the following manner: "support modification shall [be] denied except that from this time forward [Heiligenstein] shall pay ½ of child care determined to be an amount equal [to] the number of hours the parties['] children are actually in child care multiplied by 2 times the per child rate." R. 262. We hold that this portion of the Judgment is clearly erroneous because it is unsupported by the findings of fact and the conclusions which rely on those findings.

In *Scott v. Scott,* 668 N.E.2d 691, 704 (Ind.Ct.App.1996), at issue was "whether the trial court provided an adequate basis for its child support award." We noted initially that:

> In our review, we must start with the observation that our trial courts are required to make support orders in compliance with the [Child Support Guidelines] and to spell out the reasons for any support orders which deviate from the guideline results. We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded. Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet.

*Id.* (quoting *Cobb v. Cobb,* 588 N.E.2d 571, 574 (Ind.Ct.App.1992)). We then observed that grounds for the child support award were not provided in the trial court's findings. *Id.* at 704–05. We also observed that the trial court did not adopt the child support worksheets which were submitted by the parties. *Id.* at 705. We concluded that "[b]ecause the trial court's order does not reveal the basis for the award either by specific findings or by incorporation of the parties' worksheets, we cannot review the support award to determine whether it complies with the guidelines." *Id.* We then remanded the case, instructing the trial court to set forth a basis for the child support award. *Id.*

■ Although *Scott* involved review of a trial court order which followed dissolution proceedings, we believe that the principles of review announced in *Scott* also apply to orders which follow child support modification proceedings. When we are presented with an order which denies or grants modification of child support, we must determine whether the order complies with the Child Support Guidelines.

We note that the Judgment does not contain any finding or conclusion which would

---

They need a secure base to feel secure themselves.
[Counsel:] ... Do they need something they consider sort of a home base?
[Dr. LaClave:] ... Yes.
[Counsel:] Do you think that can be provided ... where the children will be moving back and forth every week?
....
[Dr. LaClave:] I think that would be very harmful.

[Counsel:] Why?
[Dr. LaClave:] Because they would really not ever be able to establish that secure home base. And a week to a child is a very long time.
R. 432–33.

7. Dr. Gonso's report was admitted into evidence and was read by the trial judge. The report recommended that Heiligenstein be granted more visitation with his sons. R. 293–94.

indicate how the trial court arrived at its child support award. We also note that the trial court did not adopt the child support worksheets submitted by the parties.[8] Under these circumstances, we cannot determine whether the trial court's child support award complies with the Child Support Guidelines. We also cannot say that the trial court's child support award is not clearly erroneous, for no findings of fact or conclusions of law support this award. We therefore remand to the trial court, instructing it "to provide a basis for its child support award." *Scott*, 668 N.E.2d at 705.

We note that the parties have raised many sub-issues which relate to the trial court's child support award. Heiligenstein has asked us to determine whether the trial court properly refused to require Matney to pay ordinary uninsured medical expenses up to 6% of the basic child support obligation, and whether the trial court gave proper weight to a stipulation entered into by the parties. Matney has asked us to determine whether the trial judge properly ordered Heiligenstein to pay only one-half of future child care expenses, and whether the trial judge used a proper method of calculating child care expenses. Because we remand for further proceedings on the child support award, we do not address any of these sub-issues.

### AWARD OF ATTORNEY FEES

⬛ At the hearing on Heiligenstein's modification petitions, Matney presented an exhibit which purported to set forth the amount of attorney fees and expenses which she had incurred in the present litigation. According to this exhibit, the fees and expenses amounted to $8,133.04. The trial court's Judgment required Heiligenstein to pay Matney's attorney $8000.

Heiligenstein argues that the trial court erred when it made this award. He claims that some of the attorney fees were incurred prior to the time his modification petitions were filed. We note that the trial court's award of attorney fees was proper, even if Heiligenstein's claim is true. *See* Ind.Code § 31–1–11.5–16(a) (current version at Ind. Code § 31–16–11–1) (stating that "[t]he court from time to time may order a party to pay a reasonable amount for ... attorneys' fees, including sums for legal services rendered and costs incurred *prior to the commencement of the proceedings....*") (emphasis added).

Heiligenstein claims that some of the attorney fees listed in Matney's exhibit represent charges for legal work which was not related to Matney's litigation of the modification petitions. Heiligenstein seems to assume that such charges are included in the $8000 award, and he claims that "[Matney] attempted to have [Heiligenstein] subsidize her fees unrelated to [Heiligenstein's modification] petitions." Brief of Appellant at 25.

We cannot assume that the $8000 award includes legal fees which were not incurred in the present litigation. When determining the amount of a reasonable attorney fee, "the court may consider such factors as the hourly rate, the result achieved ... and the difficulty of the issues." *Dougherty v. Leavell*, 582 N.E.2d 442, 443 (Ind.Ct.App.1991). The exhibit introduced by Matney provided evidence of the hourly rate her attorney charged. But there was more evidence before the trial judge than this. There was also testimony that the proceedings involved complicated issues,[9] and that Matney's exhibit may have underestimated the amount of fees she claims to have incurred.[10] Under

8. At the time of the hearing, Heiligenstein's child support obligation was $444/week. R. 189, 216, 550. In the worksheet which was used to arrive at this amount, the work-related child care expense was determined to be $242/week. R. 191. During the hearing, Heiligenstein introduced four child support worksheets which were admitted into evidence. His worksheets recommended that his weekly support obligation be $126, $196, $317, or $300, respectively. R. 323, 329, 333, 339. His worksheets estimated the weekly work-related child care expense to be $12, $12, $51, and $21, respectively. *Id.* Matney also introduced four worksheets which were admitted into evidence. Her worksheets recommended that

Heiligenstein's weekly support obligation be $468, $469, $448, or $511, respectively. R. 509, 515, 528, 531. Her worksheets estimated the weekly work-related child care expense to be $200, $130, $100, and $100, respectively. *Id.* The trial court did not adopt the support obligation which the parties' worksheets recommend.

9. R. 612–13.

10. During the hearing, Matney's attorney testified that, in his attorney fee exhibit, "I have anticipated trial prep and trial time of six hours and I think that's willfully under." R. 588.

these circumstances, we will assume that the facts before the court gave rise to a proper consideration of the various factors used to determine an attorney fee award. We will further assume that the $8000 amount does not represent the value of any particular legal service, but rather represents the cumulative, reasonable value of all legal services rendered to Matney in the present action. We therefore cannot say that the $8000 award is composed of attorney fees which were not incurred in the present litigation.

 Heiligenstein also claims that public policy prohibits an award of attorney fees to Matney. He supports this claim with *Beeson v. Christian,* which states that "[t]he statute permitting the award of attorney fees serves to insure equal access to the courts despite the relative financial conditions of the parties." 594 N.E.2d 441, 443 (Ind.1992) (quoting *P.B. v. T.D.,* 561 N.E.2d 749, 750 (Ind. 1990)). According to Heiligenstein, Matney, "a physician married to a physician, cannot sustain a claim that her income and economic resources do not afford her access to the courts." Brief of Appellant at 24. We are not convinced by Heiligenstein's argument. Because the trial judge heard evidence that Matney's financial condition was not ideal,[11] we cannot say that the attorney fee award is inconsistent with public policy.

We conclude that the portion of the Judgment which requires Heiligenstein to pay Matney's attorney fees is not clearly erroneous. The Judgment is supported by Finding 2, which indicates that Heiligenstein's income is greater than Matney's.[12] *See Olds v. Olds,* 531 N.E.2d 1219, 1221 (Ind.Ct.App.1988) (holding that, in a marriage dissolution action, husband was properly ordered to pay wife's attorney/expert witness fees when husband "enjoyed superior earning power"); *Reese v. Reese,* 671 N.E.2d 187, 193 (Ind.Ct. App.1996), *trans. denied* (holding that "[a]n award of attorney fees is proper when one party is in a superior position to pay the fees of the other party."). The trial court properly ordered Heiligenstein to pay Matney's attorney fees.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.

---

**11.** At the hearing, the following colloquy occurred between Matney and her counsel:

> [Counsel:] I just wondered with respect to the attorney fees and expenses you've incurred from my help over the past several years ... have you been in a position to pay those yourself? ·
>
> [Matney:] Not with my individual income, no.... [A]s a matter of fact since I've left my full-time position ... I have occurred [sic] substantial debt.
>
> [Counsel:] So to the extent there's been payments on your accounts, others have been doing that on your behalf?
>
> [Matney:] Yes.

> [Counsel:] You've had to go in debt to accomplish that?
>
> [Matney:] Yes.
>
> R. 629.

**12.** Finding 2 states that:

> The parties are employed. [Heiligenstein] by Eli Lilly with a base pay of $152,700, he is also a psychiatrist. [Matney] was recently employed as a psychiatrist for the Veterans Administration with earnings of $90,000, then as a psychiatrist in private practice with earnings of $45,000. There has been a voluntary reduction in her employment due to her maternity and child rearing obligations.
>
> R. 260.