Peter **SANS, Tick Tock Lounge, Inc. and Michael Elkins, Appellants–Defendants,**

v.

**MONTICELLO INSURANCE COMPANY, Appellee–Plaintiff.**

No. 49A02–9807–CV–575.

Court of Appeals of Indiana.

Nov. 5, 1999.

James H. Young, Young & Young, Indianapolis, Indiana, Attorney for Appellant Peter Sans.

William F. Thoms, Jr., Indianapolis, Indiana, Attorney for Appellant Tick Tock Lounge, Inc.

Kelly J. Pitcher, Brent W. Huber, Ice Miller Donadio & Ryan, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Peter Sans (Sans) and Tick Tock Lounge, Inc.[1] (Tick Tock) appeal the trial court's judgment that appellee-plaintiff Monticello Insurance Company (Monticello) had no duty to defend or indemnify Tick Tock or Michael E. Elkins (Elkins) under the insurance policy it issued. Specifically, Sans and Tick Tock[2] argue that the trial court erred in determining that: (1) they had the burden of proving there was coverage under the policy and (2) Monticello had no duty to defend or indemnify.[3]

1. Defendant Michael A. Elkins is not a party to this appeal.

2. Sans and Tick Tock filed separate appellate briefs. However, many of their arguments overlap.

3. We note that Sans also spends a significant portion of his brief and reply brief asserting that in Monticello's opening statement, it made a binding judicial admission that the incident was an accident and, thus, necessarily an occurrence. Moreover, Sans argues that even if the statement was simply a slip of the tongue, Monticello must live with the harsh consequences. Sans' argument is not only unpersuasive, but also disingenuous and misleading.

   While an attorney may make a judicial admission during opening statements which is binding on his client, such statement must be "a clear and unequivocal admission of fact." *Lystarczyk v. Smits*, 435 N.E.2d 1011, 1014 (Ind.Ct.App.1982). Further, "[w]here there is ambiguity or doubt in a statement, it is presumed that the attorney did not intend to make an admission." *Id.* Here, counsel for Monticello stated:
"Because this is a declaratory judgment action about an insurance contract, the sole issue is whether or not there is insurance coverage. This is an unfortunate accident, an unfortunate situation, and it's tragic; but we

### FACTS[4]

Monticello issued a Special Multi-Peril Liability Policy (the policy) to Tick Tock that provided insurance coverage from July 25, 1992 to July 25, 1993. A shooting subsequently occurred on the premises of Tick Tock on September 8, 1992 in which Elkins, its bartender, shot Sans, an unruly patron.

The facts most favorable to the judgment reveal that on the night of the shooting, as Elkins was bartending, he placed a pistol next to the cash register in plain view. Elkins had purchased this pistol from Edna Staten, the owner of Tick Tock, about a month earlier, and he believed that he was allowed to bring the pistol to the bar, as part of his job included customer control. Moreover, Staten had never told him not to bring a gun to work and Tick Tock did not have a rule against guns in the bar. Actually, prior to selling the pis-

don't need to belabor the point." Record at 168. It is evident to us, as it was to the trial court, that the term accident was inadvertently used by counsel and then immediately replaced with the term situation. Any claim that this was a clear and unequivocal admission of fact is meritless. Clearly, Monticello's counsel did not intend to adversely admit the central issue in the case.

4. We remind both counsel for Tick Tock and Sans that our rules require a narrative and fair statement of the facts in a light most favorable to the judgment and devoid of argument. *Pitman v. Pitman*, 717 N.E.2d 627, 630 n. 1 (Ind.Ct.App. 1999). Specifically, we note that Tick Tock's witness-by-witness summary of the testimony at trial, with only sporadic citations to the record, does not comply with our rules. *See Simmons v. State*, 717 N.E.2d 635, 637 n. 2 (Ind.Ct.App. 1999). Moreover, Sans does not provide a fair statement of the facts devoid of argument when he omits several relevant facts and describes the incident as follows: "On that date at approximately 2:51 a.m., the defendant, Michael Elkins, while acting within the scope and course of his employment as a bartender for Tick Tock Lounge was attempting to clear and close the tavern when a gun he was holding *accidentally discharged.*" Appellant Sans' Brief at 3 (emphasis added).

tol to Elkins, Staten had been bringing it with her to work for protection. R. at 358.

Sans arrived at the bar around 1:00 or 2:00 a.m. with two women, and the three began drinking heavily. When Sans became belligerent, Elkins ceased serving drinks to him. Sans later attempted to grab someone else's drink. After the two exchanged words and wrestled around a bit, Elkins shoved Sans out the front door. A few minutes later, Sans returned and drunkenly yelled that he was not going to leave. Sans and Elkins began wrestling and shoving again and, while Sans was getting the better of him, Elkins eventually managed to push Sans out of the bar a second time.

At some point during these altercations, which lasted between five and ten minutes, Elkins obtained his pistol from behind the bar and attempted to make it obvious to Sans that he had a gun. Further, Elkins had tried to frighten Sans by pointing the gun at him. Knowing that the gun was loaded, Elkins proceeded to cock it, placing a bullet in the chamber of the pistol. As Sans began entering the bar for the third time, Elkins approached the door, raised the pistol, which was about two to three feet from Sans' head, and fired it, striking Sans in the forehead and causing serious injuries. Despite the fact that Sans was unarmed, Elkins felt justified in his actions and described the actual shooting as an accident.

Thereafter, on November 16, 1992, Sans sued Elkins and Tick Tock alleging that Elkins had carelessly and negligently shot Sans. Monticello agreed to defend Tick Tock and Elkins in the personal injury action under a reservation of rights. However, on November 17, 1994, Monticello commenced the present declaratory judgment action against Tick Tock, Elkins and Sans[5] to adjudicate its right and obligations under the policy. Specifically, Monticello argued that it did not have a duty to defend or indemnify Tick Tock or Elkins because the definition of occurrence[6] and the assault and battery exclusion[7] precluded coverage. Monticello then filed a motion for summary judgment on February 18, 1995, and Sans filed a similar motion on June 29, 1995. Following a hearing, the trial court granted Monticello's motion for summary judgment and denied Sans' motion on November 29, 1995.

On appeal, we reversed the granting of the motion for summary judgment by our published opinion in *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099 (Ind.Ct.App. 1997), *trans. denied.* Applying the appropriate standard of review in summary judgment cases, we stated that we were not "prepared to hold, *as a matter of law,* that a .25 caliber handgun cannot 'go off' accidentally, but will only operate to carry out the specific intentions of the person holding it." *Id.* at 1104 (emphasis added).

5. We note that Monticello makes a specious argument that we should summarily affirm the trial court's judgment as to Sans because Sans is not a party to the policy and thus has no claim of coverage. We remind Monticello that it named Sans as a defendant in this action, and he clearly has an interest in this appeal.

Monticello further argues that Sans' appeal should be dismissed because he failed to include a verbatim statement of the judgment as required by Appellate Rule 8.3(A)(4) in its statement of the case. However, Monticello ignores the fact that Sans adopted by reference Tick Tock's statement of the case, which included a verbatim statement of the judgment spanning seventeen pages of its brief, as permitted by App. R. 8.3(E).

6. The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...." R. at 315.

7. This exclusion provides as follows:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault & battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.
R. at 330.

Therefore, we held that summary judgment was improper because the case turned on a genuine issue of material fact, the determination of Elkins' subjective intent or state of mind:

Although, by intentionally brandishing the firearm, Elkins may have been reckless and acted in an unjustifiable disregard of the harm that might result, the *facts in the light most favorable to the nonmovants* [Sans and Tick Tock] *do not lead inescapably* to the conclusion that the shooting was intentional, that is, that the shooting could not have been an accident which was neither expected nor intended. *Nor does the evidence in the light most favorable to the nonmovants necessarily establish* that the shooting constituted an assault and battery. That Elkins took a risk increasing the likelihood of harm does not establish the "specificity to the intent" required for Insurance Company's entitlement to summary judgment.

*Id.* (emphasis added).

On remand, the trial court heard testimony in the declaratory judgment action on May 14, 1998. In addition to the above facts, there was also testimony at trial demonstrating Elkins' experience with firearms. Specifically, while in the United States Army, Elkins was trained and qualified in the use of a .45 caliber pistol. Moreover, he had been rabbit hunting on at least one occasion, owned a .38 caliber police special handgun for a short period of time, shot a gun at the bar prior to the incident in question and fired the gun that was later used in the shooting several times into the floor of his home in order to awaken someone. Further, in his previous job as a bartender at Dungeon Bar, Elkins had placed a .357 magnum pistol in an unruly patron's face and told him to leave. Testimony also established that at the time of the shooting, Elkins was not under the influence of drugs or alcohol, distracted or bumped, and he did not drop the gun. He could not point to any type of malfunction, and an expert firearms examiner testified

that the pistol was in "excellent condition," R. at 245, the safety, trigger and cocking mechanism functioned properly, and the trigger would not fire unless it was pulled with a force of approximately eight pounds. Thus, the expert opined that on the night in question, the pistol could not have discharged without the trigger being pulled. R. at 261–62, 297.

Following the hearing, the trial court entered detailed findings of fact and conclusions of law and ultimately entered judgment in favor of Monticello and against Tick Tock, Elkins and Sans. Specifically, the court declared that Monticello had no duty to defend or indemnify Tick Tock or Elkins because Elkins' actions did not constitute an "occurrence" and even assuming an occurrence, the assault and battery exclusion precluded coverage. Tick Tock and Sans now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

We first consider the standard of review governing this appeal. Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment or decree. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380 (Ind.Ct.App.1997), *trans. denied.*

As in the instant case, when a party has requested specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). In reviewing the judgment, we must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Heiligenstein v. Matney,* 691 N.E.2d 1297, 1299–1300 (Ind.Ct. App.1998). The court's findings and judgment will not be reversed unless clearly erroneous. *Id.* at 1300. Findings of fact

are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. *Id.* The judgment is clearly erroneous when it is unsupported by the findings of fact. *Id.* In making these determinations, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.*

## II. Burden of Proof

■ Both Sans and Tick Tock argue that the trial court improperly found that Tick Tock bore the burden of establishing an occurrence. Specifically, they challenge the following finding by the trial court:

60. The policyholder, Tick Tock, bears the burden of proving by a preponderance of the evidence that there was an "occurrence" as defined by the Policy before there can be a potential right to coverage under the Policy....

R. at 149.

■ We agree that this was a misstatement of Indiana law, as the party seeking the judgment in an action for declaratory judgment must carry the burden of proving its propriety. *South Bend Community Sch. Corp. v. National Educ. Ass'n–South Bend,* 444 N.E.2d 348, 352 (Ind.Ct.App.1983) (superseded by statute on other grounds). However, we initially note that while the trial court evidently misspoke, it is apparent to us that Monticello met the appropriate burden of proof. Moreover, after determining that there was no occurrence as defined by the policy, the trial court went on to find that even assuming that Elkins' actions did constitute an occurrence, the assault and battery exclusion would preclude coverage. Thus, we will proceed to determine whether the trial court's ruling with respect to the assault and battery exclusion was clearly erroneous.

## III. Assault and Battery Exclusion

■ The arguments of Tick Tock and Sans regarding the assault and battery exclusion differ somewhat and neither is the model of clarity. Tick Tock's argument centers around its assertion that the shooting was accidental and that Elkins' actions in removing Sans and preventing his reentry were privileged, justified and excused because he was attempting to remove an unruly patron. Thus, Tick Tock challenges the sufficiency of the evidence. On the other hand, Sans asserts that the trial court erred when it found that:

[T]he Court of Appeals' opinion in *Sans v. Monticello* is not the law of this case as to the new questions that are before the Court, which arise out of the new evidence that has been presented to the Court, including the testimony of Elkins, Freel, and Staten.

R. at 148. Specifically, Sans argues that the trial court did not apply the law as expressed in our previous opinion to the facts developed at trial, and, thus, did not establish specificity to the intent. He asserts that the "trial court's *only* finding on this issue was that Elkins' actions showed such a reckless disregard for the safety of Sans and others as to demonstrate a willingness to inflict injury to others including Sans." Appellant Sans' Reply Brief at 8 (emphasis in original).

First, we quickly dispose of Tick Tock's argument, as it simply requests that we reweigh the evidence and judge witness credibility which we will not do on appeal from a final judgment. *Heiligenstein,* 691 N.E.2d at 1300. Further, the *FACTS* as set out above and included in the trial court's findings of fact, clearly support a finding that the shooting of Sans was not accidental.

Second, with respect to Sans' argument, we note that he relies too heavily on our ultimate holding in the prior appeal and seems to ignore the posture in which it was presented to us and the corresponding standard of review. We remind Sans that the standard of review for a summary

judgment ruling is entirely different than that for a final judgment. Further, the trial court did apply the following relevant law to the facts of the instant case in order to determine whether the assault and battery exclusion applied:

"[I]ntent [to apply the force constituting the battery] may be inferred from circumstances which legitimately permit it. *Intent to injure may not be implied from a lack of ordinary care.* It may be from intentional acts where the injury was the direct result of them done under circumstances showing a reckless disregard for the safety of others, and a willingness to inflict the injury, or the commission of an unlawful act which leads directly and naturally to the injury."

*Sans,* 676 N.E.2d at 1103 (quoting *Franklin Gen. Ins. Co. v. Hamilton,* 126 Ind. App. 537, 542, 133 N.E.2d 93, 96 (1956)) (emphasis in original). Here, after detailing the circumstances surrounding the shooting, Elkins' familiarity with guns and the expert's opinion that the gun was in excellent condition and could not have discharged without the trigger being pulled, the trial court found as follows:

Elkins' actions of shoving and pushing Sans with a fully loaded and fully cocked gun in his hand showed such a reckless disregard for the safety of Sans and others as to demonstrate a willingness to inflict injury to others, including Sans. Under such circumstances, the Court finds Elkins intended to cause injury to others, including Sans.

R. at 150. In light of the facts most favorable to the judgment, we cannot conclude that this finding was clearly erroneous.

Moreover, the court went on to find, in the context of the assault and battery exclusion, that:

71. Although there must be a showing that the action was expected or intended from the standpoint of the insured for there to be an "occurrence" under the policy, the assault and battery exclusion in the Policy does not require a showing of intent on the part of the insured and applies to an assault and battery *by any person,* or *any act to suppress or prevent* an assault and battery.

. . . .

79. In view of these cases, the Court finds that Elkins' and Sans' continuous and repetitive pushing, shoving, and wrestling with each other during the 5–10 minute fight or altercation constituted one or more assaults and batteries against each other, or mutual combat. The Court further finds that these acts of mutual combat resulted in the eventual and unfortunate shooting of Sans by Elkins. Although Elkins may not have intended that his actions would result in the degree of harm actually caused, the Policy, in clear and unambiguous terms, provides no coverage in these circumstances.

80. As such, the assault and battery exclusion applies to the facts of the case, and Monticello is relieved of any duty to provide liability insurance to Edna Staten, Tick Tock, or Elkins.

81. The Court further finds this reasoning to be appropriate here because allowing coverage for the benefit of Sans, who, according to Elkins, was intoxicated and provoked the altercation, would allow Sans, a wrongdoer, to profit from his wrongful acts. It would further encourage persons in Elkins' position to act with the same reckless disregard for the safety of others as in this case. Lastly, the Court is not persuaded by Edna Staten's testimony that as an owner of the bar, she neither knew about nor condoned the use of guns by the bartender to maintain customer control.

82. This court resists the temptation to construe policy provisions and applicable law in an effort to provide a source of compensation to Sans for his injuries. The fact that the mutual combat be-

tween Elkins and Sans ultimately resulted in the very unfortunate shooting of Sans by Elkins should not relieve the insured from the clear and unambiguous provisions of the Policy which specifically exclude coverage for injuries arising out of assaults and batteries. To interpret the policy otherwise would, in this court's opinion, leave the assault and battery exclusion devoid of any meaning and effect.

R. at 152, 156–57 (emphasis in original). Again, in light of the testimony elicited at trial, these findings are not clearly erroneous. We note that at trial, the evidence of the events leading up to the shooting was fully developed, including the physical altercations and Elkins' resulting fear of Sans. This is in sharp contrast to the evidence that was designated in the previous summary judgment proceedings.[8] Most notably, in the prior appeal, we were not presented with any evidence of a physical altercation between Elkins and Sans prior to the shooting. Thus, this new evidence could not have been addressed in our prior opinion and was properly considered by the trial court on remand. Such new evidence supports a finding that the shooting either occurred during an assault and battery or in an attempt to prevent or suppress a subsequent assault and battery. Therefore, we find no error.

Judgment affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.

---

**8.** A review of the record from the prior proceedings reveals that the evidence designated by the parties on summary judgment was extremely sparse. Specifically, Elkins' affidavit explained that he did not intend to shoot Sans and only hoped that the presence of the gun would scare him. Old Record at 125–26. Further, his affidavit stated that the gun accidentally fired as he raised his arms when Sans reentered after being asked to leave.

Old R. at 126. The only other evidence regarding the events prior to the shooting that we had before us in the prior appeal was the affidavit of Sergeant Roy West. He explained that Elkins reported that he and Sans had engaged in a verbal exchange, following which Elkins told Sans to leave, approached Sans with a gun and nudged him out the door. Old R. at 83–84.