In the Matter of the Supervised Administration of the ESTATE OF Richard H. WHITEHEAD, Deceased.

United Commercial Leasing Service, Inc., Appellant,

v.

John S. Elmore, Personal Representative, Appellee.

No. 77A01–9904–CV–134.

Court of Appeals of Indiana.

Nov. 9, 1999.

1208

Paul J. Wallace, David E. Gray, Evansville, Indiana, Attorneys for Appellant.

Robert B. Clemens, Bose McKinney & Evans, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Creditor United Commercial Leasing Service, Inc. (United) appeals the trial court's approval of the proposed compromise by and between the Supervised Estate of Richard H. Whitehead (Estate), by its Personal Representative, John S. Elmore (Elmore), and Northwestern Mutual Life Insurance Company (Northwestern), as a result of Northwestern's lawsuit filed in the United States District Court Southern District of Indiana, Terre Haute Division.

We affirm.

### ISSUES [1]

■ United raises three issues for our review which we restate as follows:

1. Whether the Probate Court had authority to approve the proposed compromise under the Probate Code.

2. Whether the Personal Representative failed to fulfill his duty under Ind.Code § 29-1-14-11 to inquire into the correctness of all claims against the Estate and make all available defenses thereto.

3. Whether the Personal Representative established that it was in the best interest of the Estate under Ind.Code § 29-1-14-18 to compromise the claim with Northwestern.

### FACTS AND PROCEDURAL HISTORY

On March 14, 1995, Whitehead Energies, Inc. (Energies), through its president and owner, Richard Whitehead, applied for a five million dollar ($5,000,000) term life insurance policy. The policy listed Energies as the applicant and beneficiary and Whitehead as the insured. Northwestern delivered the five million dollar term life insurance policy to Energies on May 4, 1995.

On May 10, 1995, Whitehead died from gunshot wounds as a result of an apparent murder, however, in February, 1998, William Mahn pled guilty to assisting in Whitehead's suicide, a Class C felony. Shortly after Whitehead's death, Northwestern received a claim from Energies for the proceeds of the life insurance policy.

On June 6, 1995, Whitehead's Estate was opened.

On or about July 13, 1995, Northwestern deposited $5,029,881.98 ("$5 Million Proceeds") into an access fund for Energies.

On July 11, 1997, Northwestern filed suit against Energies in the United States District Court Southern District of Indiana, Terre Haute Division, entitled, *The Northwestern Mutual Life Insurance Company v. Whitehead Energies, Inc., Susan Whitehead, John S. Elmore, as Personal Representative of the Estate of Richard H. Whitehead, deceased,* Cause No. TH97–208 –CM/F. Northwestern sought return of the policy's "NonProbate Assets," alleging that Whitehead had not been murdered and that he had breached the "Suicide Clause" of his policy. On October 30, 1997, the federal court ruled that the monies distributed to Energies consisted exclusively of the proceeds of a life insurance policy insuring the life of Whitehead, "are not estate assets, are not

---

1. We recognize that Appellant raised new issues in its Reply Brief. However, because a reply brief only enables the appellant to respond to the appellee's brief, the appellant may not assert new issues herein. Ind. Appellant Rule 8.3(C); *Crist v. K–Mart Corp.,*

653 N.E.2d 140, 144 (Ind.Ct.App.1995). Therefore, Appellee's timely filed Petition For Permission To Submit Answer Brief To New Issues Raised In Appellant's Reply Brief is hereby denied.

subject to probate proceedings, and are not to be distributed by the Probate Court." (R.143). On April 30, 1998, judgment was entered in favor of Northwestern and against Energies in the amount of $5,029,881.98.

On May 11, 1998, Elmore filed with the Probate Court a "Petition for Instruction, Authorization and Approval of Settlement." The terms of the settlement were that Northwestern would agree to release all claims against Energies in reference to their $5,029,881.98 judgment in exchange for $2,600,000. In its July 23, 1998 order, the Probate Court approved the compromise settlement. Thereafter, Elmore entered into a compromise settlement with Northwestern for $2,600,000. United, a creditor of Whitehead's Estate, now appeals the Probate Court's approval of the compromise settlement between Northwestern and Elmore, as Personal Representative of Whitehead's Estate.

## DISCUSSION AND DECISION

### Standard of Review

■■■■ We initially note our standard of review. When a trial court has entered findings of fact and conclusions of law, we engage in a two-tiered standard of review. We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1299–1300 (Ind.Ct.App.1998). The court's findings and judgment will not be reversed unless clearly erroneous. *Id.* at 1300. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. *Id.* The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In making these determinations, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.*

### I. *Probate Court Authority*

United argues that the Probate Court had no authority to approve the proposed compromise between the Estate and Northwestern. Specifically, United claims that the Probate Court's only statutory authority to approve the compromise of claims against an estate arises under Ind. Code § 29–1–14–18, and Northwestern failed to file a claim within the five month statutory time period for filing claims. Further, United argues that Ind.Code § 29–1–14–1 bars claims against an estate if not filed within five months after the date of the first published notice to creditors for the purpose of quickly identifying and distributing the assets of the estate. Therefore, United contends that because Northwestern failed to ever file a claim in the Probate Court and the proposed compromise was not consummated within five months after the date of the first published notice to creditors, the Probate Court had no authority to approve the proposed compromise. We disagree.

Ind.Code § 29–1–14–1 provides in relevant part that:

(a) Except as provided in IC 29–1–7–7, all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, unless filed with the court in which such estate is being administered within:

(1) five (5) months after the date of the first published notice to creditors.

Ind.Code § 29–1–14–18 provides that:

The personal representative may, if it appears for the best interests of the estate, compromise any claim against the estate, whether due or not due, absolute or contingent, liquidated or unliquidated, but if such claim is not filed

such compromise must be consummated within five (5) months after the date of the first published notice to creditors. In the absence of prior authorization or subsequent approval by the court, no compromise shall bind the estate.

■ In *Cardwell v. Estate of Kirkendall,* 712 N.E.2d 1047, we considered when a claim against an estate is of such a nature to be governed by Ind.Code § 29–1–14–1. Although Ind.Code § 29–1–1–3 of the Probate Code defines "claim" to include the "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone, expenses of administration, and all estate and inheritance taxes," we found that "claim," as used in Ind.Code § 29–1–14–1, has a more restrictive meaning. *Id.* at 1049. In particular, we held that the term "claim," as used to limit or bar a claim under Ind.Code § 29–1–14–1, refers to " 'a debt or demand of a pecuniary nature which could have been enforced against the decedent *in his lifetime* and could have been reduced to a simple money judgment.' " *Id.* (emphasis in original).

Here, the demand which Northwestern charged in the United States District Court could not have been enforced against Whitehead during his lifetime and could not have been reduced to a simple money judgment prior to his death. Instead, the life insurance proceeds out of which the present appeal arises were not payable until Whitehead's death. In particular, Northwestern sought the return of fraudulently obtained insurance proceeds, asking the federal court to void its life insurance contract with Whitehead for fraud and his breach of the suicide clause. Because Whitehead's life insurance policy could not become effective until his death, and because Whitehead also could not have breached the suicide clause until his death, Northwestern's lawsuit could not have been enforced against Whitehead *during his lifetime.* Northwestern's lawsuit did not meet the criteria of a "claim" under the Probate Code, and thus, was not a "claim" subject to the five month statute of limitations provision of the Probate Code.

■ Further, the federal court properly found that under Indiana law, a life insurance policy functions as a will substitute, and policy proceeds paid out pursuant to the policy contract do not pass under a will or by intestate, and are not subject to probate proceedings. (R. 143). Therefore, the federal court concluded that the money distributed to Whitehead Energies by Northwestern pursuant to the life insurance policy that insured Whitehead's life, are insurance proceeds and did not pass to Whitehead Energies through a will or by intestate succession, and therefore are not estate assets. *Id.*

■ Moreover, an exception exists under Ind.Code § 29–1–14–1(f), allowing Northwestern's claim to be filed anytime within the statute of limitations for torts. Ind.Code § 29–1–14–1(f) states in relevant part:

A tort claim against the estate of the tort feasor may be opened or reopened and suit filed against the special representative of the estate within the period of the statute of limitations of the tort. Any recovery against the tort feasor's estate shall not affect any interest in the assets of the estate unless the suit was filed within the time allowed for filing claims against the estate. The rules of pleading and procedure in such cases shall be the same as apply in ordinary civil actions.

In analyzing this statute, our supreme court concluded "that the only requirement that Indiana Code § 29–1–14–1(f) imposes on a tort action seeking liability insurance proceeds is that the suit be filed within the tort statute of limitations." *Indiana Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 995 (Ind.1999). The court reasoned that permitting tort claims to pursue insurance proceeds, but not estate assets is consistent with the purpose of the five month filing requirement, which is to permit the administrator to know the as-

sets and potential liabilities of the estate in order to provide for prompt payment of claims to conclude the estate. *Id.* at 994. The court further found that, "[b]y adding subsection (f), the legislature clearly intended to exempt tort actions for liability insurance proceeds from the requirements of the probate code .... [, and] there seems to be no reason why a suit involving only insurance proceeds should not proceed as a normal tort suit uncomplicated by the Probate Code." *Id.* at 995.

Therefore, we agree with the Probate Court that Ind.Code § 29–1–14–18 of the Probate Code clearly authorizes the Probate Court to exercise its jurisdiction to administer the estate by approving the compromise settlement of claims because: (1) Northwestern's lawsuit in federal court did not meet the criteria of a "claim" under the Probate Code, and thus, was not subject to the five month filing period for "claims" under Ind.Code § 29–1–14–1(a)(1); (2) the money that was distributed by Northwestern consisted exclusively of insurance proceeds, are not estate assets, and are not subject to probate proceedings; and (3) Northwestern's suit involved only insurance proceeds, therefore, the suit was exempted from the five month filing period under Ind.Code § 29–1–14–1(f) and could be compromised at any time, regardless of whether a claim was ever filed in the estate.

## II. *Personal Representative Duty to Investigate Claims*

■■■ Next, United argues that Elmore, as Personal Representative of Whitehead's Estate, failed in his duty under Ind.Code § 29–1–14–11 to inquire into the correctness of all claims against the Estate and make all available defenses thereto. From what we can gather from United's brief, essentially United is arguing that Elmore "allowed" Northwestern to pursue a claim in federal court and avoid the provisions of the Probate Code by not filing a claim against the Estate. United claims that by "allowing" Northwestern to pursue this tactic creates the appearance of impropriety on Elmore's part because the proposed

settlement benefited Elmore and the beneficiaries of the Estate at the expense of the creditors with properly filed claims.

Ind.Code § 29–1–14–11 provides:

Before allowing or paying claims against the estate he represents, it shall be the duty of every personal representative to inquire into the correctness of all claims against the estate and make all available defenses thereto, and if he fails so to do, he shall be liable on his bond, at the suit of any person interested in the estate, for all damages sustained by the estate in consequence of such neglect.

United cites *Riddell Nat. Bank v. Englehart*, for the proposition that Ind.Code § 29–1–14–11 mandates a clear duty for an executor to litigate doubtful claims and all available defenses to the claim, and may be liable for settling an unsound claim. 123 Ind.App. 517, 106 N.E.2d 465 (1952). United also relies on *Mutual Hosp. Services, Inc. v. Burton*, for the proposition that a personal representative holds the estate in trust and represents the bona fide creditors of an estate as well as its beneficiaries. 695 N.E.2d 641 (Ind.Ct. App.1998). We find no problem with United's reliance on these cases or the propositions drawn. However, we find that the record reveals that Elmore did in fact fulfill his duty under Ind.Code § 29–1–14–11 to inquire into the correctness of all claims against the estate and make all available defenses thereto.

Elmore attacked Northwestern's action in federal court by filing a motion to dismiss based upon the fact that there was a cause of action currently pending in an Indiana Probate Court concerning the distribution of the assets held in Whitehead's Estate. Elmore argued that there was a risk of inconsistent and irreconcilable orders from two separate sovereigns if the district court exercised its jurisdiction instead of dismissing the case. Further, Elmore contended that Northwestern's action amounted to a "claim" under the Probate Code, barring the complaint because it was not filed within the statutory five

month period. Nevertheless, the federal court rejected Elmore's arguments, stating that Northwestern's action does not constitute a claim under the Probate Code and that it would not refrain from exercising jurisdiction over the action because the proceeds from the insurance policy were not probate assets. Therefore, we find that Elmore satisfied his duty under Ind. Code § 29–1–14–11.

### III. *Settlement in Estate's Best Interest*

█ Finally, United argues that Elmore, as Personal Representative failed to establish that the proposed settlement with Northwestern was in the best interest of the Estate. Specifically, United claims that under Ind.Code § 29–1–14–18, a personal representative may only compromise a claim if it is in the best interest of the estate. United claims that Elmore failed to establish that the compromise would do anything other than create a source of payment for administrative fees. We disagree.

The facts most favorable to the Probate Court's judgment reveal that Elmore's compromise of Northwestern's claim was in the best interest of the Estate. We agree with the Probate Court's conclusions of law on this issue and find that its judgment is clearly supported by the findings of fact and conclusions entered on the findings. The Probate Court's relevant conclusions of law provide as follows:

\* \* \* \* \*

5. This Court hereby approves said settlement for the reason that it avoids the wasting of corporate assets, eliminates a substantial delay in the closing of this Estate, represents a fair and equitable settlement of the subject claim of Northwestern, and is in the best interest of Whitehead Energies, Inc., as well as the Estate of Richard H. Whitehead, deceased, and the various creditors thereof because it creates estate assets where none previously existed, which may be applied to their claims.

6. Furthermore, if the litigation which is compromised by the subject settlement were to be prosecuted through trial, not only would substantial wasting of assets and delay result, but further, if said litigation was lost by the Estate, there would be no assets available to apply to the claims of Estate creditors. The risk of such loss is significant and justifies the proposed settlement. Said settlement is fair and reasonable and has been entered into in good faith and is not the product of fraud. To the contrary, it is the product of a sound and practical decision made by the Successor Personal Representative within the discretion afforded to his position.

(R.145). Therefore, we find that the Record supports the conclusion that the compromise of Northwestern's claim was in the best interest of Whitehead's Estate.

### CONCLUSION

Based on the foregoing, we find that the Probate Court had authority to approve the proposed compromise under the Probate Code. Also, Elmore, as Personal Representative, fulfilled his duty under Ind.Code § 29–1–14–11 to inquire into the correctness of all claims against the Estate and make all available defenses thereto and it was in the best interest of the Estate under Ind.Code § 29–1–14–18 to compromise the claim with Northwestern.

Affirmed.

ROBB, J., and FRIEDLANDER, J., concur.